IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>               Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS) |
| DAVID W. CARICKHOFF, solely in his capacity as chapter 7 trustee of Live Well Financial, Inc.,<br><br>               Plaintiff,<br><br>vs.<br><br>MICHAEL C. HILD, LAURA D. HILD, CHURCH HILL VENTURES LLC, ANDERSON'S NECK LLC, THE BUTTERBEAN LLC, CLIMAX BEVERAGE CO. LLC, DOGTOWN BREWING LLC, GARDENIA LLC, HOT DIGGITY DONUTS LLC, KINGFISHER LLC, MANASTOH BREWING LLC, URBAN BLEAT CHEESE CO. LLC, ARAGON COFFEE CO. LLC, PETER STUMPF BREWING COMPANY LLC, PIN MONEY PICKLES LLC, ROSENEGK BREWING CO. LLC, VALENTINE'S MEAT-JUICE COMPANY LLC, ERIC G. ROHR, and C. DARREN STUMBERGER,<br><br>and<br><br>JOHN DOES 1-100,<br>               Defendants. | Adv. No. 21-50966 (LSS)<br><br><br><br><br><br>**Hearing Date: November 10, 2022 at 11:00 a.m. (ET)**<br>**Objection Deadline: October 14, 2022 at 4:00 p.m. (ET)** |

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER DIRECTING
LAURA D. HILD TO APPEAR FOR A DEPOSITION**

       Plaintiff, David W. Carickhoff, the Chapter 7 Trustee ("Plaintiff" or the "Trustee") of the estate of Live Well Financial, Inc. ("Live Well" or "Debtor"), by and through his undersigned counsel, moves pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7030, Federal Rule of Civil Procedure 26 and 30, and Local Rule 7026-1 of the United States Bankruptcy Court for

the District of Delaware for an order, substantially in the form attached hereto as **Exhibit A**, compelling Defendant Laura D. Hild ("Laura Hild") to appear at a deposition and answer questions about the management of the Hild Entities,[1] the disposition of the assets of the Hild Entities, and her and the Hild Entities' prior representations about those subjects. In support of this Motion, Plaintiff states as follows:

## PRELIMINARY STATEMENT

1. Michael C. Hild ("Michael Hild"), the founder and former CEO of Live Well, was indicted, tried, and found guilty by a jury of his peers of masterminding a massive criminal scheme to defraud Live Well's bond repo lenders—a criminal scheme that ultimately resulted in Live Well's implosion and involuntary Chapter 7 bankruptcy, causing more than 200 Live Well employees to lose their jobs and leaving the Live Well estate and its victim-creditors with more than $110 million in non-insider claims as of the Petition Date.

2. In the course of that years-long criminal scheme, Michael Hild transferred over $26 million in ill-gotten gains to himself, to his wife Laura Hild, and to various LLCs purportedly wholly-owned by Laura Hild—the Hild Entities. Those ill-gotten gains have never been returned.

3. Through the instant adversary proceeding, the Trustee is seeking, on behalf of the Live Well estate and its creditors, to hold Michael Hild financially responsible for the harm he inflicted on Live Well and its creditors and to recover millions of dollar in transfers to or for the benefit of Michael Hild, Laura Hild, and the Hild entities.

---

[1] Defendants Church Hill Ventures LLC, Anderson's Neck LLC, The Butterbean LLC, Climax Beverage Co. LLC, Dogtown Brewing LLC, Gardenia LLC, Hot Diggity Donuts LLC, Kingfisher LLC, Manastoh Brewing LLC, Urban Bleat Cheese Co. LLC, Aragon Coffee Co. LLC, Peter Stumpf Brewing Company LLC, Pin Money Pickles LLC, Rosenegk Brewing Co. LLC, and Valentine's Meat-Juice Company LLC.

4.     Prior to and in the course of the instant adversary proceeding, the Hilds—including Laura Hild—made two important representations that have informed the Trustee's decision-making in this litigation—representations that now appear to be *false.*

5.     First, in response to the Trustee's pre-suit Rule 2004 subpoenas, the Hilds represented and provided documentation that Laura Hild—and *not* Michael Hild—held sole management authority over the Hild Entities and their assets. But now, the Hilds' counsel asserts the opposite—namely, that Michael Hild has in reality been acting as the legal "Manager" of at least two of the Hild Entities (one of which likely holds the most significant assets) for approximately the past three years.

6.     Second, the Hilds have represented—most recently in their pending motion to stay this case—that "ALL of the Hild Defendants' assets that related to any transfer that Mr. Hild received from Live Well have been frozen by the government so there can be no concern that assets will be dissipated if a stay is entered in this case."[2] But now, again, the Hilds' counsel asserts otherwise—the Hilds apparently now believe that the Government's Restraining Order only "limits the [*sic*] Mr. and Mrs. Hild's ability to dispose of certain assets," but have refused to provide any details on what those "certain assets" might be.

7.     And the Trustee would not have uncovered any of these misrepresentations but for the fact that a third party, which was in negotiations with Michael Hild to purchase an "Oysterplex" (a floating platform for oyster fishing) belonging to one of the Hild Entities, became suspicious about Michael Hild's conduct, discovered the pendency of Michael Hild's criminal case and this adversary proceeding, and reached out to share what it knew with counsel for the Trustee.

---

[2] *Motion of Michael C. Hild, Laura D. Hild and the Hild Entities to Stay Proceedings Pursuant to the Fifth Amendment*, [Adv. Docket No. 60] (the "Stay Motion"), at ¶ 10.

8. Because serious doubts have arisen about who is managing the Hild Entities, whether the Hilds and the Hild Entities are disposing of assets, and the truthfulness of the Hild Defendants' prior representations about these subjects, the Trustee seeks an immediate deposition of Laura Hild regarding these issues so that the Trustee—and this Court—can take appropriate action if necessary to prevent the concealment or dissipation of assets that may be used to satisfy a judgment in this action.

## **BACKGROUND**[3]

9. On June 28, 2021, the Trustee commenced this adversary proceeding against Michael Hild, Laura Hild, the Hild Entities, and certain other defendants by filing the *Complaint* [Adv. Docket No. 1] (the "Complaint").

10. Through this adversary proceeding, the Trustee is seeking, on behalf of the Live Well estate and its creditors, to hold Michael Hild financially responsible for a years-long conspiracy he orchestrated to defraud Live Well's lenders that ultimately resulted in Live Well's destruction and to recover the millions of dollars of ill-gotten gains Michael Hild transferred to himself, Laura Hild, and the Hild Entities. *See* Complaint, at ¶¶ 5, 206-58.

**A.    The Hild Defendants' Prior Representations About the Management of the Hild Entities.**

11. More than two years ago, on July 13, 2020—before initiating this adversary proceeding—the Trustee served subpoenas for Rule 2004 examinations on the Hild Defendants (the "2004 Subpoenas"), pursuant to an order negotiated and agreed-upon by the Hild Defendants. *See* Main Case Docket No. 235.

---

[3] The factual allegations set forth in this motion are based upon the Trustee's investigation to date. The Trustee reserves all rights on behalf of himself, the Debtor, and the Debtor's estate.

12. In response to the 2004 Subpoenas, the Hild Defendants, including Laura Hild, represented that Laura Hild "has management authority" for the Hild Entities. *See, e.g.*, July 28, 2020 Objection of Laura D. Hild to Subpoena, a true and correct copy of which is attached hereto as **Exhibit B**, at 3. To substantiate that representation, he Hild Defendants also expressly agreed to produce, *inter alia*, "any operating agreements that exist for [the] Hild Entities." *See, e.g.*, *id.* at 7.

13. On or about September 18, 2020, the Hild Defendants produced documents in response to the 2004 Subpoenas, which included, among other things, operating agreements and amendments for Anderson's Neck LLC ("Anderson's Neck") and Church Hill Ventures, LLC ("Church Hill Ventures"). True and correct copies of those operating agreements and amendments, produced on September 18, 2020, are attached hereto as **Exhibit C**.

14. With respect to Anderson's Neck—which operates an oyster farm and sells oysters and other seafood—its original April 25, 2010 Operating Agreement designated Michael Hild as the sole Manager. *See* Ex. C at 5. But by an Amendment to the Operating Agreement "made as of December 30, 2017"—after Michael Hild became aware of the Securities and Exchange Committee investigation into his conduct at Live Well—Laura Hild purported to remove Michael Hild as Manager and designated herself as the sole Manager of Anderson's Neck. *See id.* at 22.

15. With respect to Church Hill Ventures—which is a real estate holding company that acquired at least 38 real properties located in and around Richmond, Virginia with funds traced from Live Well—its original September 18, 2014 Operating Agreement also designated Michael Hild as the sole Manager. *See* Ex. C at 27. And, as with Anderson's Neck, by a 1st Amendment to the Operating Agreement "made as of December 30, 2017," Laura Hild purported to remove

Michael Hild as Manager and designated herself as the sole Manager of Anderson's Neck. *See id.* at 34.

16. These were the ***only*** Operating Agreements and amendments produced in response to the Trustee's 2004 Subpoenas for Anderson's Neck and Church Hill Ventures. And they clearly indicated that, as of December 30, 2017, Laura Hild—and ***not*** Michael Hild—was the sole Manager of Anderson's Neck and Church Hill Ventures.

**B. The Hild Defendants' Prior Representations About the Restraining Order.**

17. On August 28, 2019, the United States District Court for the Southern District of New York, which presides over Michael Hild's criminal case, issued a Post-Indictment Restraining Order. A true and correct copy of that Restraining Order is attached hereto as **Exhibit D**. That Restraining Order broadly ordered, in relevant part,

> that MICHAEL HILD, the defendant, and all attorneys, agents, and employees, and anyone acting on the behalf of him, and all persons or entities in active concert or participation with any of the above, and all persons or entities having actual knowledge of this Order, shall not, directly or indirectly, transfer, sell, assign, pledge, hypothecate, encumber, or dispose of in any manner; cause to be transferred, sold, assigned pledged, hypothecated, encumbered, disposed of in any manner; or take, cause to be taken, any action that would have the effect of depreciation, damaging, or in any way diminishing the value of property or other interests belonging to, or owed to, or controlled in whole or in party by the defendant, which property or other interests are subject to forfeiture.

18. The Hild Defendants have—at least outwardly—maintained the position that the Restraining Order froze any assets related to transfers traceable to Live Well. Indeed, most recently, on May 7, 2022, the Hild Defendants filed a Stay Motion, in which they represented to this Court that "ALL of the Hild Defendants' assets that related to any transfers that Mr. Hild received from Live Well have been frozen by the government so there can be no concern that

6

assets will be dissipated if a stay is entered in this case." Stay Motion at ¶ 10 (emphasis in original).

        C.        **The Hild Defendants' Prior Representations Appear to Be False.**

19.        On June 28, 2022, an attorney representing a potential buyer for the "Oysterplex" (a floating dock used for oyster fishing) owned or leased[4] by Anderson's Neck reached out to counsel for the Trustee to inform the Trustee that Michael Hild had approached his client and attempted to rush a cash sale of the "Oysterplex" and related assets. To prove that he had the authority to sell those assets, Michael Hild provided the potential buyer with amendments to the Operating Agreements of Anderson's Neck and Church Hill Ventures that stated that they were "made as of December, 2019" by Laura Hild, and that purported to reappoint Michael Hild as the "Manager" of those entities (the "<u>2019 Amendments</u>"). True and correct copies of the 2019 Amendment are attached hereto as **Exhibit E**. Because the buyer's attorney believed that Michael Hild's conduct with respect to the sale raised "red flags," he independently investigated and learned of the criminal proceedings against Michael Hild and the instant adversary proceeding— which is what prompted buyer's counsel to reach out to counsel to the Trustee.

20.        The 2019 Amendments had never been produced to the Trustee—even though the 2019 Amendments were ***dated over seven months prior*** to the 2004 Subpoenas and thus raising questions about the Hild Defendants' compliance with the 2004 Subpoenas.

21.        On July 14, 2022, the Court held a status conference for the adversary proceeding. The Trustee updated the Court on the issues related to the potential sale of the "Oysterplex."

22.        After the status conference, on July 18, 2022, counsel to the Trustee and counsel to the Hild Defendants held a video call and discussed the issues related to the potential sale, the

---

[4] From Church Hill Ventures.

2019 Amendments, the Hild Defendants' compliance with the 2004 Subpoenas, the management of Anderson's Neck and Church Hill Ventures, and the Government's Restraining Order.

23. In subsequent communications, counsel to the Hild Defendants represented to counsel to the Trustee that the 2019 Amendments were drafted by Michael Hild and executed by Laura Hild in connection with the June 2022 planned sale of the Oysterplex but were back-dated to December 2019. *See* July 21, 2022 Email from C. Brown, a true and correct copy of which is attached hereto as **Exhibit F**. Counsel to the Hild Defendants further represented—contrary to the Hild Defendants' prior representations about the management of the Hild Entities—that the 2019 Amendments were made to reflect that Michael Hild had been acting as the Manager of the companies since December 2019. *See id.*

24. Additionally, contrary to the Hilds' prior representations, counsel to the Hild Defendants represented that the Government's Restraining Order ***did not*** restrain "ALL of the Hild Defendants' assets," Stay Motion at ¶ 10, but instead that they merely "severely limits the [*sic*] Mr. and Mrs. Hild's ability to dispose of certain assets." *See* July 18, 2022 Email from C. Brown, a true and correct copy of which is also attached hereto as **Exhibit F**.

25. On July 27, 2022, the Trustee, through counsel, sent a demand letter (the "Demand Letter") to counsel to the Hild Defendants, advising them that their recent representations directly contradicted their prior ones and that recent events had cast serious doubt on their forthrightness. The Trustee, therefore, requested (i) a deposition of Laura Hild regarding the amendments to the operating agreements, the management of the LLCs, the disposition of the "Oysterplex" and other assets of the Hild Entities, and the Hild Defendants' compliance with the Rule 2004 discovery and (ii) an explanation of the Hild Defendants' current understanding of the scope of the Government's Restraining Order and a list of assets the Hild Defendants believe are not subject to

the restraining order. The Demand Letter requested a response by August 8, 2022. A true and correct copy of the Demand Letter is attached hereto as **Exhibit G**.

26. On August 9, 2022, after the Hild Defendants failed to respond to the Demand Letter, counsel for the Trustee reached out to counsel for the Hild Defendants. Counsel for the Hild Defendants represented that he intended to respond to the Demand Letter and requested that any meet-and-confer be scheduled after August 24, 2022 as he would be on vacation until then.

27. On August 25, 2022, and again on August 30, 2022, counsel to the Trustee requested a meet-and-confer with counsel to the Hild Defendants. As of the filing of this Motion, counsel to the Trustee has not received *any* response whatsoever from counsel to the Hild Defendants to the Trustee's multiple requests to meet and confer regarding these matters.

## REQUESTED RELIEF

28. The Trustee respectfully requests that the Court direct Laura D. Hild to appear and be sworn for a deposition at the offices of the Trustee's co-counsel to be held within twenty (20) days of entry of an order granting the Motion to answer questions regarding (i) the management, control, and ownership of the Hild Entities; (ii) the assets of the Hild Entities and any sale, transfer or disposition of such assets; (iii) Laura D. Hild's and the Hild Entities' prior representations to the Court, the Trustee and/or his counsel regarding items (i) and (ii); and (iv) any other matters that may be testified to by Laura D. Hild during the deposition..

## BASIS FOR RELIEF

29. Rule 26(d)(1) of the Federal Rules of Civil Procedure, as made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure, provides that, generally, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, ***or by court order***." Fed. R. Civ. P.

26(d)(1) (emphasis added). "However, courts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery." *Kone Corp. v. Thyssenkrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011); *see also* Fed. R. Civ. P. 26(d)(1); Fed. R. Civ. P. 26(d) advisory committee notes (1993) ("Discovery can begin earlier if authorized . . . by local rule, order, or stipulation."). "Federal courts are also specifically authorized, if circumstances warrant, . . . to permit early depositions." *See Kone Corp.*, 2011 WL 4478477, at *3.

30. While "[t]he Federal Rules of Civil Procedures offer little guidance as to when it is appropriate to authorize expedited and/or early discovery," the District of Delaware "has previously held that a 'good cause' standard should apply—one requiring the party seeking discovery to demonstrate that its request is 'reasonable' in light of the relevant circumstances." *Cloud-Williams v. Ocwen Loan Servicing, LLC*, No. 14-1096-LPS-CJB, 2015 WL 184024, at *2 (D. Del. Jan. 13, 2015); *see also Kone Corp.*, 2011 WL 4478477, at *4-5 (applying reasonableness standard in determining whether to permit expedited discovery); *Vision Films, Inc. v. Doe*, No. 12-1748-LPS-SRF, 2013 WL 1163988, at *2-3 (D. Del. Mar. 20, 2013) (same).

31. Under the reasonableness standard, "the court must weigh the need for discovery at an early juncture in the litigation against the breadth of the discovery requests and the prejudice to the responding party, by considering such factors as: (1) the timing and context of the discovery requests, including whether a preliminary injunction hearing has been scheduled; (2) the scope and purpose of the requests; and (3) the nature of the burden to the respondent." *Kone Corp.*, 2011 WL 4478477, at *4; *see also Vision Films*, 2013 WL 1163988, at *3; *Cloud-Williams*, 2015 WL 184024, at *2.

32. Here, the need for a prompt deposition of Laura Hild is manifest.

33.     Although this adversary proceeding has already been pending for approximately *15 months*, the Hild Defendants have not yet even filed an answer or other response to the Complaint.

34.     Instead, they have continuously forestalled litigation, all the while making representations deliberately meant to assuage any concerns the Trustee and this Court might have about the dissipation and concealment of assets during this delay—including but not limited to (i) that Laura Hild (and not Michael Hild) is the Manager of the Hild Entities and (ii) that the Government's Restraining Order froze all relevant assets. *See, e.g.*, Stay Motion at ¶ 10 ("ALL of the Hild Defendants' assets that related to any transfers that Mr. Hild received from Live Well have been frozen by the government *so there can be no concern that assets will be dissipated if a stay is entered in this case*.") (emphasis added).

35.     But now, after they were recently caught acting contrary to those representations—distributing back-dated operating agreement amendments reappointing Michael Hild as Manager and attempting to sell major operating assets (the "Oysterplex")—Laura Hild and the Hild Defendants have now disclaimed their prior representations. *See supra* ¶¶ 19-24.

   a.     Laura Hild and the Hild Defendants now admit that—notwithstanding their prior representations to the contrary and the Operating Agreements they produced in response to the 2004 Subpoenas—Michael Hild, whom a jury unanimously found guilty of fraud and other crimes, has been acting as the legal Manager of the Hild Entities this entire time.

   b.     Laura Hild and the Hild Defendants now admit that—notwithstanding their prior presentations to the contrary, including their representation to this Court, that "ALL of the Hild Defendants' assets that related to any transfers

that Mr. Hild received from Live Well have been frozen by the government"—they believe that "certain" unidentified assets are not frozen and that *they* are free to interpret the District Court's Restraining Order as they see fit.

36. The Trustee has serious concerns, in light of the foregoing, that the Hild Defendants are seeking to indefinitely stay this adversary proceeding—based, *inter alia*, on the existence of the Restraining Order, which it now appears, they believe they can freely ignore—all the while they are actively dissipating and/or concealing assets that could be used to satisfy a judgment in this action.

37. Under these circumstances, the Trustee should have the opportunity to take an immediate deposition of Laura Hild in order to determine whether the Trustee and this Court need to take further action to prevent the dissipation and/or concealment of assets and to protect the interests of Live Well and its victim-creditors.

38. The Trustee's limited request is also plainly reasonable.

39. First, this adversary proceeding has *already* been pending for approximately 15 months. Under ordinary circumstances, discovery would be well underway if not concluded. Requiring Laura Hild, already the beneficiary of nine (9) prior extensions of her time to answer the Complaint, to participate in a brief deposition fifteen months after the filing of the Complaint is plainly reasonable. *See, e.g.*, *Kone Corp.*, 2011 WL 4478477, at *6 ("Any prejudice that might result from 'early' discovery is muted in a case, like this one, where the very 'early' stage of this litigation has passed.").

40. And although the Hild Defendants have moved to indefinitely stay this case—even if there were a basis to stay the case against the *other* Hild Defendants (there is not)—they

12

notably failed to offer any reason at all why this adversary proceeding should be stayed against Laura Hild. *See generally* Stay Motion; *Chapter 7 Trustee's Objection to Motion of Michael C. Hild, Laura D. Hild, and the Hild Entities to Stay Proceedings Pursuant to the Fifth Amendment*, [Adv. Docket No. 61] (the "Stay Opposition"), at ¶¶ 7, 54.

41. Second, the scope and purpose of this discovery request is reasonable and limited. As articulated above, the purpose of the request is critically important—namely, to investigate whether the Trustee needs to take further action to prevent the dissipation and/or concealment of assets and to protect the interests of Live Well and its victim-creditors. And the scope of the request—a limited deposition of Laura Hild about the management of the Hild Entities, the disposition of their assets, and her and the Hild Entities' prior representations on those subjects—is narrowly tailored to the purpose. *See Kone Corp.*, 2011 WL 4478477, at *7 (broad-ranging discovery is not proper for expedited discovery motions, but "narrow categories of documents [and information that] will substantially contribute to moving this case forward[]" are appropriate).

42. Additionally, there is an urgent need for action if, in fact, the Hild Defendants are dissipating and concealing assets. *See Cloud-Williams*, 2015 WL 184024, at *2 ("With regard to the timing and context of the discovery requests, this factor favors the moving party in situations where the urgent need for action is clear."). Tellingly, the Hild Defendants have not offered to confer with the Trustee or the United States Attorney's Office prior to selling or dissipating assets. Instead, they have asserted that they can unilaterally interpret what assets are or are not subject to the Restraining Order, despite their prior representation to this Court that the Restraining Order restrains all of their assets.

43.     Third, given the narrow focus of the requested discovery and current procedural posture, the burden on Laura Hild and the Hild Defendants is minimal. This adversary proceeding has been pending for approximately 15 months, and the Trustee only seeks a deposition from one defendant on a limited set of issues.

## CONCLUSION

44.     For all the foregoing reasons, the Trustee respectfully requests that the Court grant this Motion and enter an Order, substantially in the form attached hereto as Exhibit A, (a) scheduling a date for the deposition of Laura D. Hild; (b) directing Laura D. Hild to appear and be sworn for the deposition regarding the following matters: (i) the management, control, and ownership of the Hild Entities; (ii) the assets of the Hild Entities and any sale, transfer or disposition of such assets; (iii) Laura D. Hild's and the Hild Entities' prior representations to the Court, the Trustee and/or his counsel regarding items (i) and (ii); and (iv) any other matters that may be testified to by Laura D. Hild during the deposition, and (c) granting the Trustee such other relief as may be just and appropriate.

Dated: September 30, 2022

*/s/ Stanley B. Tarr*
Stanley B. Tarr (No. 5535)
BLANK ROME LLP
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Tel: (302) 425-6400
Facsimile: (302) 425-6464
Email: Stanley.Tarr@blankrome.com

-and-

Michael B. Schaedle (admitted *pro hac vice*)
Michael D. Silberfarb (admitted *pro hac vice*)
Huaou Yan (admitted *pro hac vice*)
Matthew E. Kaslow (admitted *pro hac vice*)
BLANK ROME LLP
One Logan Square

130 North 18th Street
Philadelphia, Pennsylvania 19103
Tel.: 215-569-5500
Fax: 215-569-5555
Mike.Schaedle@BlankRome.com
Michael.Silberfarb@BlankRome.com
Huaou.Yan@BlankRome.com
Matt.Kaslow@BlankRome.com

-and-

Alan M. Root (No. 5427)
Bryan J. Hall (No. 6285)
ARCHER & GREINER, P.C.
300 Delaware Avenue, Suite 1100
Wilmington, Delaware 19801
Tel.: 302-777-4350
Fax: 302-777-4352
aroot@archerlaw.com
bjhall@archerlaw.com

*Counsel for David W. Carickhoff,
the Chapter 7 Trustee*