**<u>EXHIBIT B</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| | ) Case No. 19-11317 (LSS) |
| LIVE WELL FINANCIAL, INC., | ) |
| | ) |
| Debtor. | ) |
| | ) |

**OBJECTION OF LAURA D. HILD TO SUBPOENA**

Laura D. Hild (the "responding party", by and through counsel, and for her objection to the Subpoena of The Chapter 7 Trustee (the "requesting party") hereby makes the following objections:

**<u>GENERAL OBJECTIONS</u>**

To the extent applicable, the following are incorporated in the response to each individual request for production, in addition to any objections set forth in any response to a particular response, as if these objections were set forth in their entirety in each response:

1.    The responding party objects to the requests for production in that they impose on the responding party a unique and undue burden.  By way of explanation, identical subpoenas have been issued to two individuals and fifteen entities.  All entities are owned by Laura D. Hild, who has been served, individually, with a subpoena.  Michael C. Hild has also been served, individually, with a subpoena.  To dispel any misconception that the operation of these businesses is anything approaching the primary job of Ms. Hild, the owner of the entities, Ms. Hild is otherwise gainfully employed full time – in fact, more than full time.  She is a principal with the renowned architecture and design firm, HKS, Inc., and manages the mid-Atlantic region of the architecture and design firm's business with a particular focus on health care design and construction.  Her projects include

1

those involving budgets of hundreds of millions of dollars. She is involved in the management of all aspects of such massive projects, and her specialized knowledge and portfolio of responsibilities with HKS, Inc., result in a demanding work schedule of often 80 hours per week or more. On top of that, she has management authority for the various "Hild Entities" / limited liability companies, which responsibility commands several more hours per week of her time. Mr. Hild, now longer employed at Live Well Financial, works 7 days a week to manage the day-to-day operations of these limited liability companies, which involves not only the regular operations of the businesses (including property management activities, construction, and general business management), but the operations of them in the "new normal" of the COVID-19 pandemic which is creating an array of challenges requiring exponentially increasing time demands (issues with vendors, creditors, tenants, and declining revenues), in addition to the management of several legal proceedings. The day-to-day handling of the business affairs of these companies represents a demand on Mr. Hild's time of far in excess of 80-90 hours per week. And then, of course, on top of that, Mr. Hild is defending multiple criminal counts in the Southern District of New York, which is already forcing him to sacrifice time needed for management of the businesses to try to save his life. The demands on Mr. Hild's time on this front are increasing and will continue to increase. This is all in addition to the general challenges of being in the midst of the COVID-19 pandemic, which makes everything more difficult in terms of meeting with counsel to prepare for the criminal matter, as well as being responsive to other counsel. Simply put, either Ms. Hild, nor Mr. Hild have the bandwidth to run down documents, let alone the volume of documents falling within the scope of documents being requested. What may appear to be a "reasonable" burden to a party not facing such challenges, is decidedly an undue burden for these responding parties, who are uniquely situated and vulnerable to the burdens being imposed by this proceeding. The responding

party's objections on the basis of burdensomeness and proportionality must be viewed against this backdrop.

2.      The responding party objects to the requests for production insofar the requesting party seeks any response that would involve or require disclosure of information that is confidential under the attorney/client privilege, protected by the attorney work-product doctrine, or otherwise exempted from disclosure in discovery by any other privilege or doctrine and thereby placed outside of the scope of discovery under state or federal law.  To that end, any requests for production that use broad and inclusive language seeking production of "all" / "any" documents that "concern," "relate to," or "refer to," a topic (including all other similarly expansive words or phrases of similar import) that could render privileged documents responsive to requests will be construed as not including attorney-client communications on the topic.

3.      The responding party objects to the requests for production to the extent that Defendant seeks information about matters that are not within the responding party's knowledge, but are particularly within either the requesting party own knowledge or particularly within the knowledge of others, such that the requesting party can obtain such information with equal or less burden than can the responding party.

4.      The responding party objects to the requests for production to the extent that any proceed from a factual premise that is false, unproven, unknown to the responding party, or otherwise in dispute.

5.      Except for any matter constituting an explicit or implicit premise underlying any requests for production that is specifically acknowledged and admitted herein, any and all such premises are unconditionally denied, and no admission should be inferred or implied by any response other than any admission so explicitly stated.  The fact that any requests for production has been

answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by such requests for production, or that such answers constitute evidence of any fact set forth or assumed by the requests for production itself. Moreover, the fact that the responding party has responded to a request for production that refers or relates to a particular document does not constitute an admission or concession regarding the authenticity, admissibility or nature of any such documents.

6.      The responding party objects to the use of the terms "relates" and "concerns," (and all variations thereof) and the broad and expansive definitions provided for them, as such words introduce inherent uncertainty and ambiguity into the requests for production, and impose burdens disproportionate to the subject of the inquiry.

7.      The responding party objects to the definition of "Hild Entitles" in the definitions provided with the requests for production as it includes two entities that are not affiliated with Laura D. Hild or Michael C. Hild: WWS IX, LLC and 1001 Ventures, LLC. The term "Hild Entities" will be construed as excluding those companies.

8.      The responding party objects to the definition of "Hild Business" in the definitions provided with the requests for production as it is vague and ambiguous as to the subject to which it is referring.

9.      The responding party objects to the requests for production, generally as being largely unlimited in temporal scope, and therefore as exceeding the bounds of legitimate inquiry.

10.      The responding party objects to the requests for production to the extent that any response would involve or require disclosure of confidential and/or proprietary information without the entry of an appropriate confidentiality protective order to guard against the dissemination of that information.

## OBJECTIONS AND WRITTEN RESPONSES TO REQUESTS FOR PRODUCTION

**1.     All documents concerning or relating to the Hilds' ownership, control, possession, acquisition, formation, donation, transfer, sale, assignment, or disposal of any of the Hild Entities or Hild Businesses;**

Objection.  Certain aspects of the request are vague and ambiguous.  Specifically, "donation," and "disposal" are ambiguous as to business entities.  These terms will be interpreted to be mean "sold" or "terminated," respectively.  Further, "possession" is an ambiguous term when applied to a business entity.  The responding party will interpret it as synonymous with "control."

Further objecting, the clause "[a]ll documents concerning or relating to…" in this context inherently calls for the production cumulative evidence that imposes an undue burden.  For example, ownership of a limited liability company is established by a document, the company operating agreement's list of members.  There are any other number of documents that may exist that also reflect this fact, but none demonstrate the fact directly, although by their subject matter they may "concern" or "relate to" the question of ownership.  Moreover, some such documents may be legally privileged attorney-client communications.  Construing the request to include privileged documents would further impose the burden of not only collecting additional documents but creating a privilege log.  The responding party will not construe the request as calling for such privileged documents, given prior statements about the Trustee's intention to not unduly burden the parties being subpoenaed, and given that the question of ownership can be determined more efficiently by other means.

Additionally, the request is overly broad insofar as it exceeds the scope of legitimate inquiry into a non-debtor's private business affairs.  *In re Mathews*, No. 18-mc-80-LPS, 2018 U.S. Dist. LEXIS 178364, at *7 (D. Del. Oct. 17, 2018).

5

Subject to the foregoing objection and without waiving it, to avoid the effects of the objectionable aspects of the request while providing the answer to the question being posed by the request, Laura D. Hild is willing to stipulate that she is, and at all relevant times herein (from 2016 to present) has been, the sole member of all Hild Entitles, as that term is properly defined (see general objections), and that there are no "Hild Business" beyond the "Hild Entities" as properly defined.  Moreover, any operating agreements that exist for Hild Entities will be produced by the entities.

**2.      All bank statements for all bank accounts owned or controlled, in whole or in part, by any of the Hilds or Hild Businesses;**

Objection.  The request is overly broad and unduly burdensome.  First, the request is not, on its face, limited to a reasonable and relevant time frame, nor do the definitions and instructions accompanying the requests provide a reasonable limitation to a relevant time frame.  Secondly, the responding party does not maintain physical or electronic copies of bank statements, as they engage in online banking.  Therefore, the responding party would have to request bank records and incur not only the burden but the cost of doing so.  As such, the records can be obtained by the requesting party via subpoena, at equal or less burden than will be imposed on the responding party.

**3.      The general ledgers for each of the Hild Entities and Hild Businesses;**

Objection.  The request is not narrowly tailored to seek legitimately relevant information stored in documents, and seeks information in documents that would be cumulative and duplicative to information available in banking records which the requesting party may subpoena.  As such, it

is overly broad insofar as it exceeds the scope of legitimate inquiry into a non-debtor's private business affairs. *In re Mathews*, No. 18-mc-80-LPS, 2018 U.S. Dist. LEXIS 178364, at *7 (D. Del. Oct. 17, 2018).

**4.    All documents concerning or relating to the ownership, possession, acquisition, control, transfer, donation, sale, assignment or disposal of real property owned between January 2016 and the present, in whole or in part, by any of the Hilds, Hild Entities, or Hild Businesses. For the avoidance of doubt, this request includes without limitation, all appraisals and valuations of all such real property, as well as, documents concerning the auctions of any Hild, Hild Entity, or Hild Business-owned real property in 2019 and 2020;**

Objection. The request is overly broad and unduly burdensome, as it would involve the search for and assembly of an undue amount of documents relating to every acquisition, financing, and transfer of dozens of properties. In addition, the request presumes, in some instances, the existence of documents that do not exist and/or that are not in the possession, custody or control, such as appraisals and valuations and documents relating to auctions organized by third parties.

Moreover, documents containing the information sought by the request – the ownership, acquisition, transfer (including sales and assignments) – are available publicly and can therefore be obtained by the requesting party equal or lesser burden than by the responding party.

Additionally, certain aspects of the request are vague and ambiguous. Specifically, "donation," and "disposal" are ambiguous as to real property. These terms will be interpreted to be mean "transfer."

Further objecting, the clause "[a]ll documents concerning or relating to…" in this context inherently calls for the production cumulative evidence that imposes an undue burden. For

example, ownership of real property is established by a deed, which is publicly recorded, and the other incidents of ownership flow from the deed identifying an owner.  There are any other number of documents that may exist that also reflect the fact of ownership, or some incident thereof, but none demonstrate the fact directly, although by their subject matter they may "concern" or "relate to" the question.  Moreover, some such documents may be between (for example) a given entity and its counsel.  Construing the request to include privileged documents would further impose the burden of not only collecting additional documents but creating a privilege log.  The responding party will not construe the request as calling for such privileged documents, given prior statements about the Trustee's intention to not unduly burden the parties being subpoenaed, and given that the question of ownership can be determined more efficiently by other means.  Furthermore, however, this same expansive phrasing would lead to a requirement to produce any number of draft documents that were revised perhaps several times in advance of a closing on real property (examples: HUD-1 statements, etc.).

Subject to the foregoing objection and without waiving it, to avoid the effects of the objectionable aspects of the request while providing the answer to the question being posed by the request, Laura D. Hild is willing to stipulate that, other than the Hilds' personal residence in Richmond, Virginia: (a) the following entities of all the Hild Entities (as properly defined) are the only ones that owned real property within the specified time frame: Church Hill Ventures, LLC, Gardenia, LLC, Kingfisher, LLC; (b) that all property owned was within the City of Richmond, Virginia or King and Queen County, Virginia, and (c) that publicly available records showing the matters at issue in the request will be found in those two counties.  This would include deeds, liens, deeds of trust (i.e., mortgages), etc.

8

**5.      Documents sufficient to show whether each of the Hild Entities or Hild Businesses, other than Live Well Financial, Inc., are actively conducting business;**

Objection.  the request is inherently vague and ambiguous, as it is unclear what documents the requesting party has in mind that would show any Hild Entity (as properly defined) is conducting business "actively," let alone show it sufficiently.  The responding party is unable to identify any particular category of document that would fall within the scope of this request.

Subject to the foregoing objection and without waiving it, to avoid the effects of the objectionable aspects of the request while providing the answer to the question being posed by the request, Laura D. Hild is willing to stipulate that, except as noted herein, the Hild Entities (as presently defined) are conducting business, subject to two caveats.

First, Anderson's Neck, Dogtown Brewing, The Butterbean, Hot Diggity Donuts are all operating businesses in the food and/or restaurant industry and as such have been profoundly negatively impacted by COVID-19. As such each of these entities have been multiple iterations of temporary closure, limited operations, or changes in its business operations/activities to comply with evolving state/federal COVID -19 requirements.  As these entities could cease operations and/or halt plans for re-opening at any time due to COVID effects.

Second, the following entities were created but did not progress past the initial development stage, and due to the present legal situation affecting the Hilds as well as COVID-19, do not have plans to begin operating:

- Aragon Coffee Co. LLC,

- Climax Beverage, LLC

- Peter Stumpf Brewing Company LLC,

- Pin Money Pickles, LLC,

- Rosenegk Brewing Co. LLC,

- Valentine's Meat-Juice Company LLC, and

- Manastoh Brewing LLC.

- Urban Bleat Cheese Co. LLC

Thus, for these entities, there could be no documents to show, sufficiently or otherwise, that they are actively conducting business. They are not doing so.

**6. Tax returns for Laura D. Hild and Michael C. Hild from 2016 through the present;**

Objection. There is no conceivably relevant information that the requesting party could glean from the personal tax returns of the Hilds. The justification for the subpoena to the Hilds and Hild Entities (as properly defined) was to explore claims to recover monies paid to Mr. Hild from Live Well Financial as well as vague allusions to other claims against him, and tracing such monies to Hild Entities or to Laura Hild (much of which is already known to the requesting party in view of publicly filed documents and materials in the criminal prosecution against Mr. Hild. LWF would have issued W-2 statements or 1099 statements to Mr. Hild showing the monies paid to him by LWF, and therefore LWF already has this information. The Hilds' tax returns will not provide any information relevant to determining whether other claims against Mr. Hild exist.

**7.      All documents concerning the Hilds', Hild Entities', or Hild Businesses' ownership, control, possession, donation, acquisition, transfer, sale, assignment or disposition of any tangible or intangible personal property, owned between January 2016 and the present, in whole or in part, by the Hilds, the Hild Entities, or the Hild Businesses, with an acquisition or sale value of US$20,000 (or the foreign currency equivalent thereof);**

Objection.  Reference to "any tangible or intangible personal property" is vague and ambiguous when applied to the Hilds and their personal assets, leaving the Hilds unsure as to what is intended to fall within the scope of this request, and how to identify documents for designation among what will or will not be produced.

Further objecting, the clause "[a]ll documents concerning …" in this context inherently calls for the production cumulative evidence that imposes an undue burden.  Beyond the documents (for example) directly relating to the acquisition of an asset, there are any other number of documents that may exist that also reflect the fact of such ownership, or some incident thereof, but which add little to nothing by way of further understanding the nature of the asset.

Subject to the foregoing objection and without waiving it, no responsive documents exist as the Hilds have not acquired or disposed of any assets above the identified threshold during the time in question.

**8.    All documents concerning or relating to the value of any security purchased or owned by Live Well Financial, Inc.;**

Objection.  The request presumes the responding party has, or at some point in the past had, possession, custody, and/or control of such documents.  The responding party does not. There are no documents responsive to this request.

**9.    All documents concerning or relating to the financing of any security purchased or owned by Live Well Financial, Inc., including any of the terms and proposed terms of any such financing arrangements; and**

See objection and response to request for production no. 8.

11

**10.     All documents concerning or relating to the value of Live Well Financial, Inc.**

See objection and response to request for production no. 8.

Respectfully Submitted,

*/s/ Jason C. Kuhlman*
Jason C. Kuhlman, Esq. (*admitted pro hac vice*)
The Law Office of Jason C. Kuhlman, PLLC
P.O. Box 17216
Ft. Mitchell, KY 41017
Telephone: 859.801.2990
Email: jason@jckuhlmanlaw.com

  - and -

*/s/ Charles J, Brown, III*
Charles J. Brown, III (DE 3368)
Gellert Scali Busenkell & Brown LLC
1201 North Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425.5800
Email:cbrown@gsbblaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing objections were served via electronic mail on this 28 day

of July, 2020, to the following:

Michael D. Silberfarb                        Stanley B. Tarr
BLANK ROME                                  BLANK ROME
One Logan Square                            1201 N. Market Street, Suite 800
130 North 18th Street|                      Wilmington, DE 19801
Philadelphia, PA 19103                      tarr@blankrome.com
MSilberfarb@blankrome.com

*/s/ Jason C. Kuhlman*