**<u>EXHIBIT C</u>**

Anderson's Neck LLC Operating Agreement and Amendments

# OPERATING AGREEMENT

## OF

## ANDERSON'S NECK, LLC

**THIS OPERATING AGREEMENT OF ANDERSON'S NECK, LLC,** a Virginia limited liability company (the "Company"), is made as of April 25th, 2010, by and between the undersigned Members of the Company.

## ARTICLE I
## FORMATION AND PURPOSES

1.1    **Formation.**  The Members acknowledge the formation of the Company under the Virginia Limited Liability Company Act (the "Act") pursuant to Articles of Organization filed with the Virginia State Corporation Commission.

1.2    **Purpose.**  The purpose of the Company is act as a limited liability investment vehicle for certain real property located in King & Queen County, Virginia; provided, however, the Company may engage in any lawful business or activity agreed to by the Members.

1.3    **Tax Classification.**  The Members intend that the Company be classified as a partnership for federal income tax purposes and this Agreement shall be interpreted accordingly.

1.4    **Limited Liability.**  No Member or Manager shall have any personal obligation for any liabilities of the Company solely by reason of being a Member or Manager, except as expressly provided by law.

## ARTICLE II
## MEMBERS

2.1    **General.**  The term "Members" means only the undersigned members and any Persons subsequently admitted as Members.  The term "Person" includes individuals and entities. A Member ceases to be a Member upon the Assignment (which term is subsequently defined in this Agreement) of such Person's entire interest in the Company.

2.2    **Member List.**  The Company shall maintain at its principal office a current list (the "Member List") showing the name, address, percentage interest in profits and losses ("Percentage Interest"), and capital contribution of each Member.

2.3    **Consent or Approval of Members.**  Consents or approvals of Members shall be based on their Percentage Interests at the time the consents or approvals are required.  Each

ANDERSON000001

Member shall be given not less than three business days' prior written notice, which may be waived, of anything requiring a consent or approval of Members.

2.4    **Admission of Members**.    Persons, other than the undersigned Members, acquiring interests in the Company by Assignment or otherwise will not become Members until their admission as Members is approved by the Manager, they execute this Agreement as it then exists, and they make any required capital contributions.

2.5    **Resignation of Member**.    Each Member agrees not to resign or withdraw from the Company except in connection with an Assignment of the Member's entire interest in the Company in a manner permitted by this Agreement.

**ARTICLE III**
**MANAGEMENT**

3.1    **Management by Manager**.    The Company shall be managed by the Manager. A Manager need not be a Member.

3.2    **Powers of Manager**.    The Manager shall have the right, duty and power to manage all aspects of the assets and business of the Company.  The powers and duties of the Manager shall include, without limitation:

    (a)    Keeping and maintaining the information and records as required by §13.1-1028 of the Act, including a current roster showing the names and addresses of the Members, copies of the organizational documents of the Company, and any amendments thereto, copies of all the Company's state, federal, and local tax returns for the three most recent years, and copies of this Agreement and the Company's financial statements for the three most recent years.

    (b)    Opening bank and investment accounts in the name of the Company and collecting all amounts payable to the Company and depositing all such amounts in the Company's accounts.  All such funds shall at all times be and remain the property of the Company.

    (c)    Disbursing from such funds such amounts as may be necessary to pay in a timely fashion all taxes and expenses incurred by the Company as they come due.

    (d)    Making arrangements for utilities and other services, as the Manager shall deem necessary or advisable for the operation of the Company's business and assets, with the Company assuming the contractual obligation of any such arrangement.

    (e)    Purchasing on behalf and at the expense of the Company, all equipment, tools, materials and supplies necessary for the operation of the Company's business and assets.

2

ANDERSON000002

(f)      Procuring and maintaining liability and other insurance to protect the Company's property and assets at the expense of the Company.

(g)      Selling, mortgaging or disposing of any of the Company's assets, or borrowing money in the Company's name for use in the Company's business and affairs.

(h)      Executing on behalf of the Company all instruments and documents necessary to conduct the business of the Company as provided in this Article III.

(i)      Employing accountants, legal counsel, managing agents, or other experts to perform services for the Company and reasonably compensating them from Company funds.

(j)      Assigning, transferring, pledging, compromising or releasing any of the claims of or debts due the Company, or arbitrating or consenting to the arbitration of any of the disputes or controversies of the Company.

3.3      **Designation of Manager**.  Michael C. Hild is hereby designated as the Manager of the Company.  Only Members representing not less than 90% of Percentage Interests may remove the Manager and/or appoint one or more additional Managers at any time.

3.4      **Compensation**.  A Manager shall be entitled to receive such compensation for services as a Manager as may be agreed by the Manager and a majority in interest of the Members.

## ARTICLE IV
## RELATIONSHIP AMONG MEMBERS AND MANAGER

4.1      **Liabilities of Members and Manager**.  Except for the contractual obligations of Members arising under this Agreement or otherwise, no Member or Manager shall have any liability to the Company arising out of a transaction, occurrence or course of conduct unless he or she engaged in willful misconduct or a knowing violation of the criminal law.

4.2      **Dealings with the Company**.  The Manager may engage the services of, or cause the Company to transact business with any Member or Manager, any Person who is related to or affiliated with a Member or such Manager, any Person having a financial interest in a Member or any Person in which a Member or Manager has a financial interest, so long as the terms and conditions of any such business or arrangement are comparable to those generally available from unrelated or non-affiliated parties.

4.3      **Other Activities**.  A Manager or Member may engage in or hold an interest in any other business or investment.  Neither the Company nor any Member shall have any rights in such business or investment or the profits thereof solely due to the relationship of the Company and/or the Member to each other or to the other business or investment.

3

ANDERSON000003

4.4    **Expenses; Reimbursement**. The Company shall bear all expenses and liabilities incurred with respect to the organization, operation, and management of the Company and its assets. A Member or Manager shall be entitled to reimbursement from the Company for any Company expenses or liabilities incurred by the Member or Manager for the Company, provided that the expenses or liabilities did not arise as a result of the Member's or Manager's willful misconduct or knowing violation of the criminal law.

## ARTICLE V
## ASSIGNEES AND ASSIGNMENTS

5.1    **General.** The term "Assignment" means a sale, gift, pledge, encumbrance, transfer at death, or other transfer, whether voluntary or involuntary, of any interest in the Company. The term "Assignor" means any Person who makes an assignment of an interest in the Company. The term "Assignee" means the owner, other than a Member, of any interest in the Company. An Assignee may become a Member only in the manner provided in this Agreement.

5.2    **Permitted Assignments**. The term "Permitted Assignment" means (i) an assignment of an interest in the Company pursuant to a will or the laws of descent upon the death of a Member, and (ii) an inter vivos assignment to a trust, custodial account, family limited partnership or liability company, or similar entity solely for estate planning purposes of the transferor. A Member may make a Permitted Assignment at any time, subject only to the consent of the Manager, which shall not be unreasonably withheld or delayed.

5.3    **Other Assignments**. A Member who proposes to make an Assignment of an interest in the Company which is not a Permitted Assignment must notify the Manager of such intent and of the name of the proposed Assignee. Such Assignment shall only be permitted with the consent of the Manager, in his sole discretion and upon the provision of such information and execution of such documents as is deemed necessary by the Manager to ensure compliance with federal and state securities laws.

5.4    **Notice of Assignments; Effectiveness**. The Company shall not be required to recognize any Assignment until the Manager receives notice thereof and, notwithstanding the provisions of this Article, no Assignment will be permitted if it would result in a termination of the Company for federal income tax purposes or would violate any law including federal and state securities laws. An Assignment not made in accordance with this Agreement shall be void *ab initio*.

5.5    **Rights of an Assignee**. An Assignment of an interest in the Company entitles the Assignee, to the extent assigned, to the Capital Account and Percentage Interest of the Assignor. An Assignment does not entitle the Assignee, whether or not a Member, to participate in the management and affairs of the Company or to become a Member, to the extent of the Assignment, until the Manager consents to such Assignment in writing. The Member List shall reflect the same information with regard to Assignees as it does with regard to Members.

4

ANDERSON000004

## ARTICLE VI
## CAPITAL

6.1    **Capital Accounts**.  The Company sh all maintain a capital account ("Capital Account") for each Member and Assignee. The value of each Capital Account shall equal (i) the sum of the cash contributions to the account, the agreed upon value of contributions of property to the account, and the share of the profits of the Company allocated to the account, less (ii) all distributions made to the owner of the account and the share of the net losses of the Company allocated to the account.  The agreed upon value assigned to an account for contributions of property shall be determined by the Manager.  Capital Accounts shall be maintained in accordance with the applicable provisions of the Internal Revenue Code and shall not bear interest.

6.2    **Capital Contributions**.  The amount of the Members' capital contributions shall be determined at the time they are admitted as Members.

6.3    **Additional Contributions or Loans**.  The Manager may require Members to make additional capital contributions to the extent necessary to cover expenses incurred in the ordinary course of business of the Company.  Any such capital contributions shall be allocated based on Percentage Interests.  Except as otherwise provided in this Agreement, no Person shall be required to contribute or lend money or property to the Company.

6.4    **Return of Capital**.  No Person shall be entitled to require the return of all or any part of such Person's Capital Account.

6.5    **Loans Not Capital Contributions**.  A loan to the Company shall not be considered a capital contribution.

## ARTICLE VII
## ALLOCATIONS AND DISTRIBUTIONS

7.1    **Profits and Losses**.  The profits and losses of the Company shall be allocated to, or deducted from, the Capital Accounts of the Members and Assignees, annually, or, more frequently, in accordance with their Percentage Interests.

7.2    **Distributions**.  Cash which the Manager determines is not necessary for the operations or reserves of the Company and its assets may be distributed to the Members and Assignees at such times as determined by the Manager.  Distributions generally shall be made in accordance with Percentage Interests.

7.3    **Distributions Following Dissolution**.  Following the dissolution of the Company and the winding up of its affairs, the assets shall be distributed:

(a) first, to satisfy debts and obligations of the Company;

(b) second, to set up any reserves deemed appropriate by the Manager; and

ANDERSON000005

(c) third, among the Members and Assignees in proportion to their respective Percentage Interests.

## ARTICLE VIII
## TAX MATTERS

8.1    **Tax Allocations**. Except as required by the Internal Revenue Code, the Company shall allocate its tax items in the same manner as its book items.

8.2    **Tax Matters**. The tax year of the Company shall be the calendar year.    The Manager may make, refrain from making, or revoke all tax elections under the Internal Revenue Code. Michael C. Hild is hereby designated the Company's "Tax Matters Partner" as required by the Internal Revenue Code.

8.3    **Taxpayer Identification Number**.    The Company's taxpayer identification number is 27-2394350.

## ARTICLE IX
## DISSOLUTION

9.1    **Events of Dissolution**.    The Company shall be dissolved upon the determination of the Manager, together with the written consent of a majority in interest of the Members to dissolve the Company; or

9.2    **Winding Up and Termination**. The business and affairs of the Company shall be wound up following its dissolution. Upon completion of the winding up, the Company shall terminate.

## ARTICLE X
## INDEMNIFICATION

10.1    <u>**Indemnification and Elimination of Liability**</u>.    In any proceeding brought by or in the right of the Company or brought by or on behalf of its members, no manager or member shall be liable to the Company or its members for any monetary damages with respect to any transaction, occurrence, course of conduct, or otherwise, except for liability resulting from such manager's or member's having engaged in willful misconduct or a knowing violation of the criminal law or any federal or state securities laws. The Company shall indemnify (i) any person who was or is a party to any proceeding, including a proceeding brought by a member in the right of the Company or brought by or on behalf of members of the Company, by reason of the fact that he is or was a manager of the Company, or (ii) any manager who is or was serving at the request of the Company as an officer, director, member, manager, partner, or trustee of another corporation, partnership, limited liability company, joint venture, or other enterprise, against any liability incurred by him in connection with such proceeding unless he engaged in willful misconduct or a knowing violation of the criminal law or any federal or state securities laws. The Company shall pay for or reimburse the reasonable expenses incurred by any manager who is a party to a proceeding in

6

ANDERSON000006

advance of final disposition of the proceeding if the manager furnishes the Company (i) a written statement of his good faith belief that he has met the standard of conduct described in this Article, and (ii) a written undertaking, executed personally or on his behalf, to repay the advance if it is ultimately determined that he did not meet such standard of conduct, which undertaking shall be an unlimited general obligation of such but need not be secured and may be accepted without reference to financial ability to make repayment. The indemnification expressly provided in this Article shall not be exclusive of (i) any right to indemnification provided or mandated by the applicable laws of the Commonwealth of Virginia, as enacted and amended from time to time, or (ii) any rights under any policies of insurance that may be purchased and maintained by the Company or others, with respect to claims, issues or matters in relation to which the Company would not have the power to indemnify such person under the provisions of this Article. This Article shall not prevent or restrict the power of the Company to make or provide for any further indemnity, or provisions for determining entitlement to indemnity, pursuant to one or more indemnification agreements, bylaws or other arrangements. No amendment or repeal of this Article shall have any effect on the rights provided under this Article with respect to any act or omission occurring prior to such amendment or repeal.

## ARTICLE XI
## ADMINISTRATIVE PROVISIONS

11.1    **Offices.** The initial principal office, registered office, and registered agent shall be as set forth in the Articles of Organization. The Manager may change the principal office, the registered office, or the registered agent.

11.2    **Books and Records**. The Manager shall keep full and accurate books of account and records at the principal office of the Company. Upon reasonable notice, each Member, or the Member's designated representative, shall have access to such books and records during reasonable business hours and may inspect and make copies of them at the Member's expense.

11.3    **Notice**. Notices and communications given pursuant to this Agreement (including the consents or approvals of Members and changes of address for purposes of the Member List) shall be in writing and shall be delivered by hand, telefax, electronic mail, commercial courier or registered or certified mail (return receipt requested and postage prepaid), to the addressee in person or to the address of the addressee as then shown on the Member List, if the addressee is a Member or an Assignee, and to the principal office of the Company if the addressee is a Manager. All such notices, except notices given by mail, shall be deemed to have been received when delivered, if delivered during business hours, or on the next business day following delivery if not delivered during business hours. Notices given by mail shall be deemed to have been given on the earlier of (i) the date shown on the return receipt, or (ii) five days after being deposited in the U.S. Mail.

## ARTICLE XII
## MISCELLANEOUS

12.1    **Amendment.** This Agreement only may be amended by the consent of Members representing not less than 90% of Percentage Interests.

7

ANDERSON000007

12.2.    **Waiver of Partition.**  Each of the Members of the Company irrevocably waives any right to maintain any action for partition with respect to the property of the Company.

12.3    **Company Property.**  The legal title to any real or personal property or interest therein now or hereafter acquired by the Company shall be owned, held or operated in the name of the Company, and no Member, individually, shall have any ownership interest in such property.

12.2    **Interpretation**.  Unless the context otherwise requires, terms used and not defined in this Agreement shall have the same definitions set forth in the Act.

12.3    **Power of Attorney**.  Each Member hereby constitutes and appoints the Manager (and each of them if there is more than one) as such Member's true and lawful attorney-in-fact in such Member's name, place and stead, to execute, acknowledge and deliver or file any certificate required by law to be filed by the Company with any governmental agency.

12.4    **No Third Party Beneficiaries**.  No provision in this Agreement shall affect the Members' and Assignors' insulation from personal liability for Company debts that is provided for in the Act. No provision of this Agreement shall inure to the benefit of, or be enforceable by, any third party, including, without limitation, any creditor of the Company or any creditor of a Member.

12.5    **Governing Law**.  This Agreement shall be governed by the laws of the Commonwealth of Virginia, without giving effect to its choice of laws rules.

12.6    **Counterparts**.  This Agreement may be executed in counterparts and each Member's counterpart signature page hereto shall bind such Member to the terms of this Agreement.

[Signature Page Follows]

8

ANDERSON000008

## MEMBER SIGNATURE PAGE

IN WITNESS WHEREOF, each Member has executed this Operating Agreement of ANDERSON'S NECK, LLC, a Virginia limited liability company, as of the date first written above.

Members

*Michael C. Hild*

Michael C. Hild


Mary J. Hendrix Living Trust

By:

*Mary J. Hendrix*

Mary J. Hendrix, Trustee

9

ANDERSON000009

**MEMBER LIST**
**OF**
**ANDERSON'S NECK, LLC**
**(as of April 25th, 2010)**

| Member | Contribution Amount | Percentage Interest | Address |
|---|---|---|---|
| Mary J. Hendrix Living Trust | | 78% | |
| Michael C. Hild | | 22% | |
| | | | |
| Total | | 100% | |

#3094446 v1    036199.00001

## DEED OF GIFT, TRANSFER AND ASSIGNMENT

THIS DEED OF GIFT, TRANSFER AND ASSIGNMENT, made as of June 30th, 2011, by Michael C. Hild ("Husband") to Laura D. Hild ("Wife"), provides:

WHEREAS, Husband is the owner of 562,014.26 membership interest shares in Anderson's Neck, LLC (the "Membership Interests").

WHEREAS, effective as of the date hereof, Husband desires to gratuitously transfer and assign by gift, and without value or consideration of any kind, the Membership Interests to Wife to be her sole and separate property.

### WITNESSETH

NOW, THEREFORE, in consideration of the foregoing recitals the parties agree as follows:

1.     Transfer and Gift.   In consideration of love and affection, Husband hereby irrevocably gives, transfers and assigns, without value or consideration of any kind, to Wife all of his right, title and interest in the Membership Interests.

2.     Acceptance.   Wife irrevocably accepts the gift and transfer of the Membership Interests.

3.     General Provisions.   This agreement shall be construed in accordance with the laws of the Commonwealth of Virginia.   This gift, transfer and assignment is irrevocable and shall be binding upon and inure to the benefit of the parties and their successors in interest.

WITNESS the following signatures to this Deed of Gift, Transfer and Assignment:

HUSBAND

_____

Michael C. Hild

WIFE

_____

Laura D. Hild

ACKNOWLEDGED AND AGREED:

ANDERSON'S NECK, LLC

BY:

_____

Michael C. Hild, Manager

#3854617 v1    036554.00001

2

ANDERSON000012

# Stock Transfer

Purchaser Name:    Michael C. Hild

Purchaser Address:  2302 E. Marshall Street, Richmond, VA 23223

Seller Name:    Mary J. Hendrix Living Trust

Seller Address:    8420 Lave Avenue, Watervliet, MI, 49098

By signing below, I fully acknowledge and understand that the Seller has received good and valuable consideration in the amount of $360,000.00 from the Purchaser in exchange for the sale by the Seller of 360,000 shares of stock (price of $1.00 per share) of Anderson's Neck, LLC to the Purchaser.

Signed on this _6_ day of _July_ 2011.

Purchaser Name:    Michael C. Hild

Purchaser Signature:  _Michael C Hild_

Seller Name:    Mary J. Hendrix Living Trust

Seller Signature:    _Mary J. Hendrix_

Signed By:    Mary J. Hendrix, Trustee

ANDERSON000013

## DEED OF GIFT, TRANSFER AND ASSIGNMENT

THIS DEED OF GIFT, TRANSFER AND ASSIGNMENT, made as of July 30th, 2011, by Michael C. Hild ("Husband") to Laura D. Hild ("Wife"), provides:

WHEREAS, Husband is the owner of _368,408.90_ membership interest shares in Anderson's Neck, LLC (the "Membership Interests").

WHEREAS, effective as of the date hereof, Husband desires to gratuitously transfer and assign by gift, and without value or consideration of any kind, the Membership Interests to Wife to be her sole and separate property.

### WITNESSETH

NOW, THEREFORE, in consideration of the foregoing recitals the parties agree as follows:

1.　　Transfer and Gift. In consideration of love and affection, Husband hereby irrevocably gives, transfers and assigns, without value or consideration of any kind, to Wife all of his right, title and interest in the Membership Interests.

2.　　Acceptance. Wife irrevocably accepts the gift and transfer of the Membership Interests.

3.　　General Provisions. This agreement shall be construed in accordance with the laws of the Commonwealth of Virginia. This gift, transfer and assignment is irrevocable and shall be binding upon and inure to the benefit of the parties and their successors in interest.

ANDERSON000014

WITNESS the following signatures to this Deed of Gift, Transfer and Assignment:

HUSBAND

_____
Michael C. Hild

WIFE

_____
Laura D. Hild

ACKNOWLEDGED AND AGREED:

ANDERSON'S NECK, LLC

BY:

_____
Michael Hild, Manager

#3854617 v1    036554.00001

2

ANDERSON000015

## DEED OF GIFT, TRANSFER AND ASSIGNMENT

THIS DEED OF GIFT, TRANSFER AND ASSIGNMENT, made as of November 15th, 2011, by Michael C. Hild ("Husband") to Laura D. Hild ("Wife"), provides:

WHEREAS, Husband is the owner of $26,175.52$ membership interest shares in Anderson's Neck, LLC (the "Membership Interests").

WHEREAS, effective as of the date hereof, Husband desires to gratuitously transfer and assign by gift, and without value or consideration of any kind, the Membership Interests to Wife to be her sole and separate property.

## WITNESSETH

NOW, THEREFORE, in consideration of the foregoing recitals the parties agree as follows:

1.    Transfer and Gift.  In consideration of love and affection, Husband hereby irrevocably gives, transfers and assigns, without value or consideration of any kind, to Wife all of his right, title and interest in the Membership Interests.

2.    Acceptance.  Wife irrevocably accepts the gift and transfer of the Membership Interests.

3.    General Provisions.  This agreement shall be construed in accordance with the laws of the Commonwealth of Virginia.  This gift, transfer and assignment is irrevocable and shall be binding upon and inure to the benefit of the parties and their successors in interest.

ANDERSON000016

WITNESS the following signatures to this Deed of Gift, Transfer and Assignment:

HUSBAND

_____

Michael C. Hild

WIFE

_____

Laura D. Hild

ACKNOWLEDGED AND AGREED:

ANDERSON'S NECK, LLC

BY:

_____

Michael Hild, Manager

#3854617 v1    036554.00001

2

ANDERSON000017

## DEED OF GIFT, TRANSFER AND ASSIGNMENT

THIS DEED OF GIFT, TRANSFER AND ASSIGNMENT, made as of December 31st, 2011, by Michael C. Hild ("Husband") to Laura D. Hild ("Wife"), provides:

WHEREAS, Husband is the owner of _4144.85_ membership interest shares in Anderson's Neck, LLC (the "Membership Interests")

WHEREAS, effective as of the date hereof, Husband desires to gratuitously transfer and assign by gift, and without value or consideration of any kind, the Membership Interests to Wife to be her sole and separate property.

### W I T N E S S E T H

NOW, THEREFORE, in consideration of the foregoing recitals the parties agree as follows:

1.    Transfer and Gift.  In consideration of love and affection, Husband hereby irrevocably gives, transfers and assigns, without value or consideration of any kind, to Wife all of his right, title and interest in the Membership Interests

2.    Acceptance.  Wife irrevocably accepts the gift and transfer of the Membership Interests

3.    General Provisions.  This agreement shall be construed in accordance with the laws of the Commonwealth of Virginia.  This gift, transfer and assignment is irrevocable and shall be binding upon and inure to the benefit of the parties and their successors in interest

ANDERSON000018

WITNESS the following signatures to this Deed of Gift, Transfer and Assignment:

HUSBAND

_____

Michael C. Hild

WIFE

_____

Laura D. Hild

ACKNOWLEDGED AND AGREED:

ANDERSON'S NECK, LLC

BY:

_____

Michael C. Hild, Manager

#3854617 v1    036554 00001

2

ANDERSON000019

# AMENDMENT TO THE OPERATING AGREEMENT

## OF

### ANDERSON'S NECK, LLC

**THIS AMENDMENT TO THE OPERATING AGREEMENT OF ANDERSON'S NECK, LLC**, a Virginia limited liability company  (the "Company"), is made as of December 30, 2017, by the undersigned Member of the Company.

On the date written above, Michael C. Hild was removed as Manager and Tax Matters Partner of the Company. Laura Dyer Hild who is the sole Member of the Company will now assume the role of role of Manager and Tax Matters Partner as of the date written above.

**IN WITNESS WHEREOF**, the sole Member has executed this AMENDMENT TO THE OPERATING AGREEMENT of ANDERSON'S NECK, LLC, a Virginia limited liability company, as of the date first written above.

Member

Name: Laura Dyer Hild

Church Hill Ventures, LLC Operating Agreement and Amendments

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082



# Commonwealth of Virginia

## STATE CORPORATION COMMISSION

*Richmond, September 16, 2014*

*This is to certify that the certificate of organization of*

Church Hill Ventures, LLC

*was this day issued and admitted to record in this office and that the said limited liability company is authorized to transact its business subject to all Virginia laws applicable to the company and its business.  Effective date: September 16, 2014*



*State Corporation Commission*
*Attest:*

*Joel H. Peck*
Clerk of the Commission

CISECOM

CHV000001

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

## OPERATING AGREEMENT

### OF

## CHURCH HILL VENTURES, LLC

THIS **OPERATING AGREEMENT OF CHURCH HILL VENTURES, LLC**, a Virginia limited liability company (the "Company"), is made as of September 18, 2014, by and between the undersigned Members of the Company.

### ARTICLE I
### FORMATION AND PURPOSES

1.1     **Formation**. The Members acknowledge the formation of the Company under the Virginia Limited Liability Company Act (the "Act") pursuant to Articles of Organization filed with the Virginia State Corporation Commission.

1.2     **Purpose**. The purpose of the Company is act as a limited liability investment vehicle; provided, however, the Company may engage in any lawful business or activity agreed to by the Members.

1.3     **Tax Classification**. The Members intend that the Company be classified as a partnership for federal income tax purposes and this Agreement shall be interpreted accordingly.

1.4     **Limited Liability**. No Member or Manager shall have any personal obligation for any liabilities of the Company solely by reason of being a Member or Manager, except as expressly provided by law.

### ARTICLE II
### MEMBERS

2.1     **General**. The term "Members" means only the undersigned members and any Persons subsequently admitted as Members. The term "Person" includes individuals and entities. A Member ceases to be a Member upon the Assignment (which term is subsequently defined in this Agreement) of such Person's entire interest in the Company.

2.2     **Member List**. The Company shall maintain at its principal office a current list (the "Member List") showing the name, address, units of membership interest in the Company ("Shares") and capital contribution of each Member. As of any date of determination, a Member's percentage ownership interest ("Percentage Interest") in the Company shall be equal to the number of Shares then owned by such Member divided by the total Shares then outstanding.

CHV000002

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

2.3 **Consent or Approval of Members.** Consents or approvals of Members shall be based on their Percentage Interests at the time the consents or approvals are required. Each Member shall be given not less than three business days' prior written notice, which may be waived, of anything requiring a consent or approval of Members.

2.4 **Admission of Members.** Persons, other than the undersigned Members, acquiring Shares in the Company by Assignment or otherwise will not become Members until their admission as Members is approved by the Manager, they execute this Agreement as it then exists, and they make any required capital contributions.

2.5 **Resignation of Member.** Each Member agrees not to resign or withdraw from the Company except in connection with an Assignment of the Member's entire interest in the Company in a manner permitted by this Agreement.

### ARTICLE III
### MANAGEMENT

3.1 **Management by Manager.** The Company shall be managed by the Manager. A Manager need not be a Member.

3.2 **Powers of Manager.** The Manager shall have the right, duty and power to manage all aspects of the assets and business of the Company. The powers and duties of the Manager shall include, without limitation:

(a) Keeping and maintaining the information and records as required by §13.1-1028 of the Act, including a current roster showing the names and addresses of the Members, copies of the organizational documents of the Company, and any amendments thereto, copies of all the Company's state, federal, and local tax returns for the three most recent years, and copies of this Agreement and the Company's financial statements for the three most recent years.

(b) Opening bank and investment accounts in the name of the Company and collecting all amounts payable to the Company and depositing all such amounts in the Company's accounts. All such funds shall at all times be and remain the property of the Company.

(c) Disbursing from such funds such amounts as may be necessary to pay in a timely fashion all taxes and expenses incurred by the Company as they come due.

(d) Making arrangements for utilities and other services, as the Manager shall deem necessary or advisable for the operation of the Company's business and assets, with the Company assuming the contractual obligation of any such arrangement.

CHV000003

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

(e)    Purchasing on behalf and at the expense of the Company, all equipment, tools, materials and supplies necessary for the operation of the Company's business and assets.

(f)    Procuring and maintaining liability and other insurance to protect the Company's property and assets at the expense of the Company.

(g)    Selling, mortgaging or disposing of any of the Company's assets, or borrowing money in the Company's name for use in the Company's business and affairs.

(h)    Executing on behalf of the Company all instruments and documents necessary to conduct the business of the Company as provided in this Article III.

(i)    Employing accountants, legal counsel, managing agents, or other experts to perform services for the Company and reasonably compensating them from Company funds.

(j)    Assigning, transferring, pledging, compromising or releasing any of the claims of or debts due the Company, or arbitrating or consenting to the arbitration of any of the disputes or controversies of the Company.

3.3    **Designation of Manager.**  Michael C. Hild is hereby designated as the Manager of the Company.  Only Members representing not less than 90% of Percentage Interests may remove the Manager and/or appoint one or more additional Managers at any time.

3.4    **Compensation.**  A Manager shall be entitled to receive such compensation for services as a Manager as may be agreed by the Manager and a majority in interest of the Members.

## ARTICLE IV
## RELATIONSHIP AMONG MEMBERS AND MANAGER

4.1    **Liabilities of Members and Manager.**  Except for the contractual obligations of Members arising under this Agreement or otherwise, no Member or Manager shall have any liability to the Company arising out of a transaction, occurrence or course of conduct unless he or she engaged in willful misconduct or a knowing violation of the criminal law.

4.2    **Dealings with the Company.**  The Manager may engage the services of, or cause the Company to transact business with any Member or Manager, any Person who is related to or affiliated with a Member or such Manager, any Person having a financial interest in a Member or any Person in which a Member or Manager has a financial interest, so long as the terms and conditions of any such business or arrangement are comparable to those generally available from unrelated or non-affiliated parties.

3

CHV000004

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

4.3 **Other Activities**. A Manager or Member may engage in or hold an interest in any other business or investment. Neither the Company nor any Member shall have any rights in such business or investment or the profits thereof solely due to the relationship of the Company and/or the Member to each other or to the other business or investment.

4.4 **Expenses; Reimbursement**. The Company shall bear all expenses and liabilities incurred with respect to the organization, operation, and management of the Company and its assets. A Member or Manager shall be entitled to reimbursement from the Company for any Company expenses or liabilities incurred by the Member or Manager for the Company, provided that the expenses or liabilities did not arise as a result of the Member's or Manager's willful misconduct or knowing violation of the criminal law.

## ARTICLE V
## ASSIGNEES AND ASSIGNMENTS

5.1 **General**. The term "Assignment" means a sale, gift, pledge, encumbrance, transfer at death, or other transfer, whether voluntary or involuntary, of any interest in the Company. The term "Assignor" means any Person who makes an assignment of an interest in the Company. The term "Assignee" means the owner, other than a Member, of any interest in the Company. An Assignee may become a Member only in the manner provided in this Agreement.

5.2 **Permitted Assignments**. The term "Permitted Assignment" means (i) an assignment of an interest in the Company pursuant to a will or the laws of descent upon the death of a Member, and (ii) an inter vivos assignment to a trust, custodial account, family limited partnership or liability company, or similar entity solely for estate planning purposes of the transferor. A Member may make a Permitted Assignment at any time, subject only to the consent of the Manager, which shall not be unreasonably withheld or delayed.

5.3 **Other Assignments**. A Member who proposes to make an Assignment of an interest in the Company which is not a Permitted Assignment must notify the Manager of such intent and of the name of the proposed Assignee. Such Assignment shall only be permitted with the consent of the Manager, in his sole discretion and upon the provision of such information and execution of such documents as is deemed necessary by the Manager to ensure compliance with federal and state securities laws.

5.4 **Notice of Assignments; Effectiveness**. The Company shall not be required to recognize any Assignment until the Manager receives notice thereof and, notwithstanding the provisions of this Article, no Assignment will be permitted if it would result in a termination of the Company for federal income tax purposes or would violate any law including federal and state securities laws. An Assignment not made in accordance with this Agreement shall be void *ab initio*.

5.5 **Rights of an Assignee**. An Assignment of an interest in the Company entitles the Assignee, to the extent assigned, to the Capital Account and Percentage Interest of the Assignor. An Assignment does not entitle the Assignee, whether or not a Member, to participate in the

CHV000005

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

management and affairs of the Company or to become a Member, to the extent of the Assignment, until the Manager consents to such Assignment in writing. The Member List shall reflect the same information with regard to Assignees as it does with regard to Members.

## ARTICLE VI
## CAPITAL

6.1     **Capital Accounts**. The Company shall maintain a capital account ("Capital Account") for each Member and Assignee. The value of each Capital Account shall equal (i) the sum of the cash contributions to the account, the agreed upon value of contributions of property to the account, and the share of the profits of the Company allocated to the account, less (ii) all distributions made to the owner of the account and the share of the net losses of the Company allocated to the account. The agreed upon value assigned to an account for contributions of property shall be determined by the Manager. Capital Accounts shall be maintained in accordance with the applicable provisions of the Internal Revenue Code and shall not bear interest.

6.2     **Capital Contributions**. The amount of the Members' capital contributions shall be determined at the time they are admitted as Members.

6.3     **Additional Contributions or Loans**. The Manager may require Members to make additional capital contributions to the extent necessary to cover expenses incurred in the ordinary course of business of the Company. Any such capital contributions shall be allocated based on Percentage Interests. Except as otherwise provided in this Agreement, no Person shall be required to contribute or lend money or property to the Company.

6.4     **Return of Capital**. No Person shall be entitled to require the return of all or any part of such Person's Capital Account.

6.5     **Loans Not Capital Contributions**.   A loan to the Company shall not be considered a capital contribution.

## ARTICLE VII
## ALLOCATIONS AND DISTRIBUTIONS

7.1     **Profits and Losses**. The profits and losses of the Company shall be allocated to, or deducted from, the Capital Accounts of the Members and Assignees, annually, or, more frequently, in accordance with their Percentage Interests.

7.2     **Distributions**. Cash which the Manager determines is not necessary for the operations or reserves of the Company and its assets may be distributed to the Members and Assignees at such times as determined by the Manager. Distributions generally shall be made in accordance with Percentage Interests.

7.3     **Distributions Following Dissolution**. Following the dissolution of the Company and the winding up of its affairs, the assets shall be distributed:

5

CHV000006

(a) first, to satisfy debts and obligations of the Company;

(b) second, to set up any reserves deemed appropriate by the Manager; and

(c) third, among the Members and Assignees in proportion to their respective Percentage Interests.

## ARTICLE VIII
## TAX MATTERS

8.1    **Tax Allocations.** Except as required by the Internal Revenue Code, the Company shall allocate its tax items in the same manner as its book items.

8.2    **Tax Matters.** The tax year of the Company shall be the calendar year.  The Manager may make, refrain from making, or revoke all tax elections under the Internal Revenue Code. Michael C. Hild is hereby designated the Company's "Tax Matters Partner" as required by the Internal Revenue Code.

8.3    **Taxpayer Identification Number.**    The Company's taxpayer identification number is 47-1852537.

## ARTICLE IX
## DISSOLUTION

9.1    **Events of Dissolution.**    The Company shall be dissolved upon the determination of the Manager, together with the written consent of a majority in interest of the Members to dissolve the Company; or

9.2    **Winding Up and Termination.** The business and affairs of the Company shall be wound up following its dissolution. Upon completion of the winding up, the Company shall terminate.

## ARTICLE X
## INDEMNIFICATION

10.1    <u>Indemnification and Elimination of Liability.</u>    In any proceeding brought by or in the right of the Company or brought by or on behalf of its members, no manager or member shall be liable to the Company or its members for any monetary damages with respect to any transaction, occurrence, course of conduct, or otherwise, except for liability resulting from such manager's or member's having engaged in willful misconduct or a knowing violation of the criminal law or any federal or state securities laws. The Company shall indemnify (i) any person who was or is a party to any proceeding, including a proceeding brought by a member in the right of the Company or brought by or on behalf of members of the Company, by reason of the fact that he is or was a manager of the Company, or (ii) any manager who is or was serving at the request of the Company as an officer, director, member, manager, partner, or trustee of another corporation,

6

CHV000007

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

partnership, limited liability company, joint venture, or other enterprise, against any liability incurred by him in connection with such proceeding unless he engaged in willful misconduct or a knowing violation of the criminal law or any federal or state securities laws. The Company shall pay for or reimburse the reasonable expenses incurred by any manager who is a party to a proceeding in advance of final disposition of the proceeding if the manager furnishes the Company (i) a written statement of his good faith belief that he has met the standard of conduct described in this Article, and (ii) a written undertaking, executed personally or on his behalf, to repay the advance if it is ultimately determined that he did not meet such standard of conduct, which undertaking shall be an unlimited general obligation of such but need not be secured and may be accepted without reference to financial ability to make repayment. The indemnification expressly provided in this Article shall not be exclusive of (i) any right to indemnification provided or mandated by the applicable laws of the Commonwealth of Virginia, as enacted and amended from time to time, or (ii) any rights under any policies of insurance that may be purchased and maintained by the Company or others, with respect to claims, issues or matters in relation to which the Company would not have the power to indemnify such person under the provisions of this Article. This Article shall not prevent or restrict the power of the Company to make or provide for any further indemnity, or provisions for determining entitlement to indemnity, pursuant to one or more indemnification agreements, bylaws or other arrangements. No amendment or repeal of this Article shall have any effect on the rights provided under this Article with respect to any act or omission occurring prior to such amendment or repeal.

## ARTICLE XI
## ADMINISTRATIVE PROVISIONS

11.1   **Offices**. The initial principal office, registered office, and registered agent shall be as set forth in the Articles of Organization. The Manager may change the principal office, the registered office, or the registered agent.

11.2   **Books and Records**. The Manager shall keep full and accurate books of account and records at the principal office of the Company. Upon reasonable notice, each Member, or the Member's designated representative, shall have access to such books and records during reasonable business hours and may inspect and make copies of them at the Member's expense.

11.3   **Notice**. Notices and communications given pursuant to this Agreement (including the consents or approvals of Members and changes of address for purposes of the Member List) shall be in writing and shall be delivered by hand, telefax, electronic mail, commercial courier or registered or certified mail (return receipt requested and postage prepaid), to the addressee in person or to the address of the addressee as then shown on the Member List, if the addressee is a Member or an Assignee, and to the principal office of the Company if the addressee is a Manager. All such notices, except notices given by mail, shall be deemed to have been received when delivered, if delivered during business hours, or on the next business day following delivery if not delivered during business hours. Notices given by mail shall be deemed to have been given on the earlier of (i) the date shown on the return receipt, or (ii) five days after being deposited in the U.S. Mail.

CHV000008

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

## ARTICLE XII
## MISCELLANEOUS

12.1    **Amendment.** This Agreement only may be amended by the consent of Members representing not less than 90% of Percentage Interests.

12.2.    **Waiver of Partition.** Each of the Members of the Company irrevocably waives any right to maintain any action for partition with respect to the property of the Company.

12.3    **Company Property.** The legal title to any real or personal property or interest therein now or hereafter acquired by the Company shall be owned, held or operated in the name of the Company, and no Member, individually, shall have any ownership interest in such property.

12.2    **Interpretation.** Unless the context otherwise requires, terms used and not defined in this Agreement shall have the same definitions set forth in the Act.

12.3    **Power of Attorney.** Each Member hereby constitutes and appoints the Manager (and each of them if there is more than one) as such Member's true and lawful attorney-in-fact in such Member's name, place and stead, to execute, acknowledge and deliver or file any certificate required by law to be filed by the Company with any governmental agency.

12.4    **No Third Party Beneficiaries.** No provision in this Agreement shall affect the Members' and Assignors' insulation from personal liability for Company debts that is provided for in the Act. No provision of this Agreement shall inure to the benefit of, or be enforceable by, any third party, including, without limitation, any creditor of the Company or any creditor of a Member.

12.5    **Governing Law.** This Agreement shall be governed by the laws of the Commonwealth of Virginia, without giving effect to its choice of laws rules.

12.6    **Counterparts.** This Agreement may be executed in counterparts and each Member's counterpart signature page hereto shall bind such Member to the terms of this Agreement.

[Signature Page Follows]

8

DocuSign Envelope ID: 747CD2E6-938E-4D66-AD6B-50A84074C082

## MEMBER SIGNATURE PAGE

**IN WITNESS WHEREOF**, each Member has executed this Operating Agreement of CHURCH HILL VENTURES, LLC, Virginia limited liability company, as of the date first written above.

Member:

Name:

LAURA D. HILD.

9

CHV000010

# 1ST AMENDMENT TO THE OPERATING AGREEMENT

## OF

## CHURCH HILL VENTURES, LLC

**THIS 1ST AMENDMENT TO THE OPERATING AGREEMENT OF CHURCH HILL VENTURES, LLC,** a Virginia limited liability company (the "Company"), is made as of December 30, 2017, by the undersigned Member of the Company.

On the date written above, Michael C. Hild was removed as Manager and Tax Matters Partner of the Company. Laura Dyer Hild who has been the sole Member of the Company since the Company's inception will now assume the role of role of Manager and Tax Matters Partner as of the date written above.

**IN WITNESS WHEREOF**, the sole Member has executed this Operating Agreement of CHURCH HILL VENTURES, LLC, a Virginia limited liability company, as of the date first written above.

Member

Name: Laura Dyer Hild

CHV000011