**EXHIBIT G**

# BLANKROME

One Logan Square
130 North 18th Street | Philadelphia, PA 19103-6998

Phone: (215) 569-5417
Fax: (215) 569-5000
Email: michael.silberfarb@blankrome.com

July 27, 2022

**VIA EMAIL AND FEDEX**

Charles J. Brown III
GELLERT SCALI BUSENKELL & BROWN, LLC
1201 N. Orange Street, 3rd Floor
Wilmington, DE 19801
cbrown@gsbblaw.com

Re: In re Live Well – Carickhoff v. Hild, et al., Adv. Pro. No. 21-50966 (LSS) (Bankr. D. Del.)

Dear Mr. Brown:

As you know, this firm represents David W. Carickhoff, Chapter 7 trustee of Live Well Financial, Inc. (the "Trustee"), in the above-captioned adversary proceeding. We write further to our July 18, 2022 phone call and subsequent email correspondence regarding the "December 2019" amendments to the operating agreements of Defendant Anderson's Neck, LLC ("Anderson's Neck") and Defendant Church Hill Ventures, LLC ("Church Hill Ventures") and your clients' attempted sale of significant operating assets of Anderson's Neck.

As we explained to you, my co-counsel Bryan Hall was contacted about two weeks ago by an attorney representing a potential buyer for the "Oysterplex" owned or leased[1] by Anderson's Neck. That attorney informed Mr. Hall that Defendant Michael Hild had approached his clients and attempted to rush a cash sale of the "Oysterplex" and related assets. To prove that he had the authority to sell those assets, Mr. Hild provided the potential buyer with amendments to the operating agreements of Anderson's Neck and Church Hill Ventures. The amendments stated that they "made as of December, 2019" by Defendant Laura Hild, and they purported to appoint Mr. Hild as the "Manager" of those entities. Because the buyer's attorney believed that Mr. Hild's conduct with respect to the sale raised "red flags," he investigated and learned of the criminal proceedings against Mr. Hild and the instant adversary proceeding—which we are advised is what prompted buyer's counsel to reach out to Mr. Hall.

---

[1] From Church Hill Ventures.

# BLANKROME

Charles J. Brown III
July 27, 2022
Page 2

These facts and circumstances are concerning for two primary reasons:

**First**, two years ago on July 13, 2020, the Trustee served Subpoenas for Rule 2004 Examinations on your clients, pursuant to an order negotiated and agreed-upon by your clients. *See* Order (ECF 235), *In re: Live Well Financial, Inc.*, No. 19-11317 (Bankr. D. Del. July 12, 2020). In response to those subpoenas, your clients expressly agreed to produce, *inter alia*, "any operating agreements that exist for [the] Hild Entities." However, your clients had never previously produced the two amendments that Mr. Hild has recently been sharing with third parties.

There are only two possibilities: (1) The amendments were in existence prior to July 13, 2020—as they plainly state on their face—and were, therefore, improperly withheld from your clients' 2020 subpoena response, or (2) they were not in existence prior to July 13, 2020 but were instead backdated by over seven months.

Your latest email now states, in relevant part, that:

> Right before the sale was scheduled to take place, the purchaser's attorney asked for documentation that Michael Hild had the authority to sign the document. I am informed that Mr. Hild draft[ed] the agreement himself and made it "as of December 2019" to reflect the fact that Mr. Hild had been managing the company since then.

This explanation is not only inconsistent with the plain language of the amendments themselves, but it is also inconsistent with your clients' prior representations in this case and the previously-produced operating agreements for these entities. In your clients' responses to the aforementioned Rule 2004 subpoenas, each of them represented that Laura Hild had "management authority for the various 'Hild Entities' / limited liability companies." And that was consistent with all of the operating agreements and amendments then-produced, which all named Laura Hild—and ***only*** Laura Hild—as the legal "Manager" for those entities at all times after December 2017.[2]

Now, however, Mr. Hild claims that these latest amendments reflect the actual circumstances of those entities—namely, that he has, in reality, been acting as the legal "Manager"

---

[2] The claim in your July 18, 2022 email that the Hilds have "consistently" represented "that Mr. Hild had been managing all of the Hild entities since his departure from Live Well" is misleading. Your clients have taken advantage of the ordinary meaning of the word "manage" to obfuscate Mr. Hild's role with respect to the LLCs. But "Manager" has a specific meaning under the Virginia Limited Liability Company Act (*see, e.g.*, VA. CODE ANN. §§ 13.1-1022 *et seq.*) and under the operating agreements at issue (*see* Art. III) that is different from the colloquial use of that term. The question is whether Mr. Hild retained the right to bind the LLCs legally with authority—not whether he was managing their businesses on day-to-day basis.

BLANKROME

Charles J. Brown III
July 27, 2022
Page 3

for the past two-and-half years, notwithstanding whatever the operating agreements in existence at those times stated.

So, which is it? Who, between December 2019 and whenever the latest amendments were executed, was the legal "Manager" (as that term is defined under Virginia law and the relevant operating agreements) of Anderson's Neck and Church Hill Ventures?

It is apparent that your clients' answer to these questions changes based on the circumstances. When your clients wanted to distance Mr. Hild from these LLCs, they were happy to represent to the world that Laura Hild held sole management authority and reflect that in filings with Virginia on notice to third parties. And now, when Mr. Hild wants to sell material assets out of these entities, they appear to have doctored up new documents that represent that Michael Hild has held sole management authority over Anderson's Neck and Church Hill Ventures for the past two-and-a-half years.

And your latest explanation raises additional questions. For example, given that Laura Hild could have easily executed any sales agreement on behalf of Anderson's Neck and Church Hill Ventures, why was it even necessary for Mr. Hild to execute the sales agreement? And even if it were necessary for Mr. Hild to sign, why was it necessary to backdate the amendments by two-and-half years?

In light of the foregoing, the Trustee requires Laura Hild's deposition regarding the issues raised in and related to this letter (including but not limited to the recent amendments to the operating agreements, the management of the LLCs, the sale of the Oysterplex and related assets, and her and the LLCs' compliance with the Rule 2004 discovery). If the explanation in your latest email is, in fact, the truth, there should be no problem with Ms. Hild testifying so under oath. Please promptly advise whether you intend to oppose the deposition so that we can seek appropriate relief from the Court. Otherwise, please kindly furnish some dates and times that would be convenient for Ms. Hild.

**Second**, in their motion seeking to stay the adversary proceeding, your clients represented to the Court that "ALL of the Hild Defendants' assets that related to any transfers that Mr. Hild received from Live Well have been frozen by the government so there can be no concern that assets will be dissipated if a stay is entered in this case." (emphasis in original). Your clients claimed that this was a reason why this Court should stay the instant adversary proceeding.

However, that representation is apparently not true. You and your clients now claim that the Government's restraining order only "limits the Mr. and Mrs. Hild's ability to dispose of certain assets," which, in the view of the Hilds, apparently does not include oyster farming assets that he was attempting to sell. July 18, 2022 Email from C. Brown to H. Yan.

# BLANKROME

Charles J. Brown III
July 27, 2022
Page 4

Please provide an explanation of what your clients' current understanding of the scope of the Government's restraining order and a list of which other assets your clients believe are not subject to the restraining order by **Monday, August 8, 2022**

**Please be advised that the Trustee reserves all rights to seek appropriate relief from the Court with regarding to the matters discussed, including but not limited to moving for prejudgment attachment or other appropriate preliminary injunctive relief in light of your clients' current position on the scope of the Government's restraining order.**

Finally, you have suggested that the Trustee (and/or his counsel) has improperly "interfere[d] with Mr. Hild's legitimate effort to contract with third parties," including by making representations "to third parties, including Virginia, that the assets are under the control of a trustee." Those suggestions are baseless.

As we represented to the Court and as we told you on our July 18, 2022 phone call, Mr. Hall, in response to a cold call from the buyer's counsel, did nothing more than: (a) confirm the existence of the criminal case, the Government's restraining order, and the bankruptcy, (b) tell the buyer's counsel to direct any inquiries about the restraining order to the U.S. Attorney's Office for the Southern District of New York, and (c) notify the U.S. Attorney's Office of his call with buyer's counsel.

Neither Mr. Hall, the Trustee, nor anyone else representing the Trustee has made any representations whatsoever about the scope of the Government's restraining order or the ownership or control of any assets of the Hild Entities—not to the buyers' counsel, not to the Commonwealth of Virginia, not to the U.S. Government, not to anyone.

Frankly, your clients have no one but themselves to blame for any confusion or delay caused by their attempts to sell or dispose of assets owned by entities that are subject to a restraining order issued by the U.S. District Court for the Southern District of New York in Mr. Hild's own criminal case without consulting the parties in interest.

Should you have any questions regarding the Government's restraining order, we encourage you to discuss them with Mr. Hild's criminal counsel at the Morvillo Abramowitz firm or with the Assistant United States Attorneys, who are:

        Jordan Estes, Esquire        Jordan.Estes@usdoj.gov
        Scott Hartman, Esquire      Scott.Hartman@usdoj.gov

# BLANKROME

Charles J. Brown III
July 27, 2022
Page 5

As to the other matters discussed above, we look forward to your prompt responses to the issues set forth above and are available for a call to discuss these matter further at a mutually convenient time.

Sincerely,

*/s/ Michael D. Silberfarb*

MICHAEL D. SILBERFARB

cc:   Huaou Yan
      Bryan Hall