IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS) |
| DAVID W. CARICKHOFF, solely in his capacity as chapter 7 trustee of Live Well Financial, Inc.,<br><br>Plaintiff,<br><br>- against -<br><br>MICHAEL C. HILD, LAURA D. HILD, CHURCH HILL VENTURES LLC, ANDERSON'S NECK LLC, THE BUTTERBEAN LLC, CLIMAX BEVERAGE CO. LLC, DOGTOWN BREWING LLC, GARDENIA LLC, HOT DIGGITY DONUTS LLC, KINGFISHER LLC, MANASTOH BREWING LLC, URBAN BLEAT CHEESE CO. LLC, ARAGON COFFEE CO. LLC, PETER STUMPF BREWING COMPANY LLC, PIN MONEY PICKLES LLC, ROSENEGK BREWING CO. LLC, VALENTINE'S MEAT-JUICE COMPANY LLC, ERIC G. ROHR, and C. DARREN STUMBERGER,<br><br>and<br><br>JOHN DOES 1-100;<br><br>Defendants. | Adv. Pro. No. 21-50966 (LSS)<br><br>(Jury Trial Demanded) |

**PRO SE DEFENDANTS MICHAEL C. HILD AND LAURA D. HILD'S
MOTION FOR LEAVE TO REOPEN DISCOVERY AND MODIFY SCHEDULING ORDER**

Pro Se Defendants Michael C. Hild and Laura D. Hild (collectively, the "Hilds")[1] respectfully move this Court pursuant to Fed. R. Bankr. P. 7016 and Fed. R. Civ. P. 16(b)(4) for entry of an order (i) vacating all expired deadlines in prior scheduling orders, (ii) reopening fact discovery

---

[1] Mr. and Mrs. Hild have prepared and filed this document *pro se* but it is written in third person for the sake of clarity when reading. Mr. and Mrs. Hild are not attorneys, and do not waive their right to maintain the confidential treatment of their attorney-client privileged communications.

1

for 180 days, (iii) lifting the stay on pro se discovery imposed by D.I. 215, and (iv) establishing the new case schedule set forth herein and in the attached proposed Order. In support, the Hilds state:

## I. INTRODUCTION

1. The Hilds, previously represented by Charles J. Brown III, were unable to complete any meaningful defense discovery because Mr. Brown failed to conduct or follow through with discovery despite years of opportunity, then withdrew only after discovery had closed and critical deadlines had passed.

2. Mr. Brown repeatedly assured the Hilds discovery was proceeding, yet the discovery inventory he finally produced in September 2025 — four months after this Court's explicit May 12, 2025 directive — revealed that little to no third-party discovery had occurred (see Hilds' October 28, 2025 status letter, Adv. D.I. 233, paragraph 3).

3. Mr. Brown's withdrawal motion (Adv. D.I. 184) and communications cited overwhelming eldercare responsibilities and caseload issues that existed throughout the discovery period — the precise reasons no defense discovery occurred.

4. The Hilds have been diligent at every stage: April 2025 pro se emergency request (Adv. D.I. 186 Ex. A), May 2025 opposition to withdrawal with alternative request to reopen discovery and extend expert deadlines (Adv. D.I. 190), October 28, 2025 letter advising the Court of the 180-day need once the inventory was received (Adv. D.I. 233), and oral repetition at the October 30, 2025 status hearing.

5. Despite this Court's clear expectation, expressed at the May 12, 2025 hearing, that the schedule would be adjusted once the discovery inventory was produced, no order has been entered, and the D.I. 215 stay on pro se discovery remains in full force and effect.

## II. GOOD CAUSE EXISTS UNDER RULE 16(b)(4)

6. The Hilds acted diligently; prior counsel did not. Courts routinely find good cause where prior counsel abandons discovery obligations. Inge v. Rock Fin. Corp., 281 F.3d 613, 625 (6th Cir. 2002); Trask v. Olin Corp., 298 F.R.D. 244, 252 (W.D. Pa. 2014); Leary v. Daeschner, 349 F.3d 888, 907 (6th Cir. 2003).

7. The Trustee will suffer no undue prejudice from a 180-day reopening — he has conducted virtually no third-party discovery either.

8. 180 days is necessary given the number of recalcitrant non-parties and the complexity of third-party subpoenas required to rebut the Trustee's valuation fraud claims.

## III. THE REQUESTED DISCOVERY IS LIMITED, TARGETED WITH PARTICULARITY, AND ESSENTIAL TO CORE ISSUES

9. The Hilds identify below the specific entities/individuals, the form of discovery (documents and depositions), and the precise reasons each is essential, tied directly to the Trustee's claims of fraudulent valuation, misrepresentation, concealment, scienter, causation, and damages[2]:

• Deposition and documents from co-defendant Charles Darren Stumberger: To address his role in valuations and disclosures, supporting defenses of lack of fraudulent intent (no scienter in alleged scheme) and no causation (losses due to market/regulatory factors, not misrepresentations).

---

[2] Carickhoff refers to "criminal" activity and continuously mentions and relies upon the testimony and outcome of the federal criminal case in this case. However, these same allegations went unaddressed by Mr. Hild's former, and now suspended, criminal attorney Mr. Ben Dusing. Mr. Dusing did not enter a single piece of evidence during Mr. Hild's direct testimony, did not subpoena witnesses, did not call key witnesses, and missed important disclosure deadlines for notifying opposing counsel of the intention to rely on the advice of counsel defense, essentially rendering the trial as a sham.

3

- Deposition and documents from Mr. Glen Haddock[3]: Former CFO of Live Well with documents and information. Defendant Hild seeks to address inconsistencies in prior testimony, supporting defenses of lack of fraudulent intent (no scienter in alleged scheme) and no causation (losses due to market/regulatory factors, not misrepresentations).

- Deposition and documents from Live Well's auditor Matt McDonald[4] (and Keiter): To confirm audit processes and communications re bond valuations, supporting defenses of no material misrepresentation (valuations reasonably believed accurate) and reliance on professional advice (audits showed no issues).

- Deposition and documents from Mr. Dan Foster[5]: To explore his development of bond valuations at Live Well and role as a government cooperator providing conflicting quotes to Bloomberg in exchange for leniency/non-prosecution, which were hidden and used to force default, supporting defenses of no causation (default due to government-induced sabotage, not scheme) and lack of fraudulent intent (quotes not knowingly inflated by the Hilds).

---

[3] Mr. Haddock testified untruthfully in the companion criminal case, (upon which Mr. Carickhoff relies and refers to it continuously in filings in this case. The Hilds must ask Mr. Haddock about the evidence which has already been provided in the filings in this case.

[4] Mr. McDonald will be able to supply testimony (consistent with interviews in the criminal case) that contradict Mr. Rohr's evasive and misleading testimony in more recent sworn civil depositions and on the stand in the criminal case which led to conviction (upon which Mr. Carickhoff relies and refers to it continuously in filings in this case. Defendant Hild must ask Mr. McDonald about the veracity of Mr. Rohr's testimony and present evidence which will show Mr. Rohr intentionally attempted to cause Live Well to be torpedoed and forced into default with its lenders and placed into bankruptcy, in exchange for leniency by the Securities and Exchange Commission.

[5] Mr. Foster is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. It has recently been discovered that Mr. Foster was the source of the conflicting bond quotes which were supplied to Bloomberg, and upon which Bloomberg relied when producing valuations for Live Well's bonds, which in turn were i) used to place Live Well into default with its lenders, ii) then place Live Well into bankruptcy, iii) used to "evidence" the alleged inflated IDC valuation in the criminal trial which led to conviction (upon which Mr. Carickhoff relies and refers to continuously in filings in this case, see Footnote 4). The Hilds must ask Mr. Foster about the evidence which includes evidence already provided in the filings in this case.

• Deposition and documents from Mr. Kirk Evans[6]: To address his interface with lenders and Mr. Rohr as an unwitting pawn in sabotage by altering bond repo tracking settings to starve cash, directed by government cooperator Mr. Rohr in exchange for leniency, supporting defenses of no causation (failure due to government-induced sabotage, not inflated marks) and no material misrepresentation (communications and settings altered secretly).

• Deposition and documents from Mr. Chris Krupa[7] (and IDC/ICE/Intercontinental Exchange): To explore IDC bond valuations and SEC contacts, revealing that IDC asked Live Well to supply bond valuations, that it was commonplace industry practice at the time for IDC to rely on single broker quotes, and that IDC was secretly under SEC/government control for over a year and a half (per recently obtained documents showing an SEC subpoena) until compelled to stop pricing Live Well's bonds with intent to sabotage, supporting defenses of lack of fraudulent intent (valuations eliminated and/or set externally under government influence, not by the Hilds) and no material misrepresentation (process aligned with industry norms, sabotage not misrepresentation).

---

[6] Mr. Evans will be able to supply testimony that Defendant Hild believes will contradict Mr. Rohr's evasive and misleading testimony in more recent sworn civil depositions and on the stand in the criminal case which led to conviction (upon which Mr. Carickhoff relies and refers to it continuously in filings in this case. Defendant Hild must ask Mr. Evans about the veracity of Mr. Rohr's testimony and present evidence which will show that Mr. Rohr intentionally attempted to cause Live Well to be torpedoed (with Mr. Evans unwittingly performing key actions at Mr. Rohr's direction) and forced into default with its lenders, and placed into bankruptcy, in hopes for leniency by the Securities and Exchange Commission.

[7] Mr. Krupa was the primary individual who developed, posted, and supplied bond valuations at IDC which Mr. Carickhoff alleges to be inflated. IDC and Mr. Krupa are in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. It has recently been discovered that Mr. Krupa was the point of contact with the Securities and Exchange Commission, who under its influence and control and under false pretenses, ceased publishing bond valuations in order for the conflicting Bloomberg quotes (relying upon Mr. Foster) to be relied upon, which in turn were used to i) place Live Well into default with its lenders, ii) then place Live Well into bankruptcy, iii) and to "evidence" the alleged inflated IDC valuation in the criminal trial which led to conviction (upon which Mr. Carickhoff relies and refers to it continuously in the filings in this case. The Hilds must ask Mr. Krupa about the evidence which has already been provided in the filings in this case.

- Deposition and documents from SEC and its Staff (Greg Smolar, Reid Muoio, Jeffrey Leisure, Jay Clayton)[8]: To obtain communications on events leading to default, supporting defenses of no causation (losses from regulatory pressures/government action, not scheme) and lack of intent (actions in good faith amid external influences).

- Deposition and documents from Dani James[9]: To address her role as proxy for Mr. Foster in secret government dealings to set conflicting Bloomberg bond prices, critical to causation and lack of intent defenses.

- Documents and limited depositions from Wedbush Securities (Scott Skyrym, Jim Kearney, David Weaver), Industrial and Commercial Bank of China, Mirae Asset Securities, Mizuho Bank, Customers Bank[10]: Involved in bond trades and repo agreements central to the case;

---

[8] The SEC and its Staff (Greg Smolar, Reid Muoio, Jeffrey Leisure and Jay Clayton (former head of SEC and now head of SDNY) were the individuals who orchestrated the torpedoing of Live Well by i) pressuring/encouraging Mr. Stumberger to resign, ii) pressuring/encouraging Mr. Rohr to resign, and prior to leaving the company, secretly directing his staff (without Board or CEO knowledge or approval) to surreptitiously change the repo tracking settings in the federal banking system for the company's bond portfolio causing the company's monthly bond coupon cash to be sent to the lenders rather than the US Bank securities control account, so Live Well would be deprived of access (in violation of its lending agreements) in order to starve Live Well of cash and send it spiraling into default with its lenders, iii) pressuring/encouraging Mr. Foster, (including through/via his counsel Dani James) to set Bloomberg up with conflicting HECM IO bond valuations, and iv) pressuring/encouraging IDC to stop posting Live Well's bond valuations (which Mr. Carickhoff alleges to be inflated). The SEC and its Staff are in possession of documents and information that must be obtained in document production and via depositions related to the allegations in the complaint. It has recently been discovered that the aforementioned individuals were used by the Securities and Exchange Commission Actors in order to place i) Live Well into default with its lenders, ii) then place Live Well into bankruptcy, iii) and to "evidence" the alleged inflated IDC valuations in the criminal trial which led to conviction (upon which Mr. Carickhoff relies and refers to continuously in filings in this case. The Hilds must ask the Securities and Exchange Commission Actors about this evidence, including that which has already been included in the filings in this case.

[9] Dani James, former counsel to Mr. Foster, is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. Defendant Hild must ask Ms. James about the evidence which has already been provided in the filings in this case. Per these documents Ms. James acted as a proxy for Mr. Foster in many of the meetings with the Securities and Exchange Commission without Mr. Foster present.

[10] Wedbush Securities (Scott Skyrym, Jim Kearney, and David Weaver), Industrial and Commercial Bank, Mirae Asset Securities, Mizuho Bank and Customers Bank for which Mr. Brown never followed through. Bond trades via the Repo and lending agreements between Live Well and these financial institutions, and at the bond valuations therein, are at the very heart of this case. Without this information, including communications/directives from the SEC with these parties (which have been hidden until recently and which Mr. Carickhoff alleges precipitated the movement of bonds between trading partners/lenders, ultimately leading to default, but was originally instigated by secret communications/actions of the SEC with the Repo Parties/Lenders starting in early 2017, perhaps even as far back as the 4th quarter of 2016).

communications with SEC; essential to show third-party knowledge/approval of practices and external causation factors.

• Deposition/documents from Flagstar Bank executive management (Jim Ciroli CFO, Alessandro DiNello CEO, Toby Thomas CIO, Lee Smith COO) and prior 30(b)(6) deponent Mr. Marsh[11]: Executives hold key decision-making information per Mr. Marsh's testimony; rebuts concealment, reliance, and causation.

• Documents/deposition from Helios Strategic Advisors LLC (Oliver Dupiton, Tol Ho)[12]: Alleged supplier of bond quotes to Bloomberg; to verify lack of evidence produced; essential for valuation disputes.

• Documents/deposition from Bloomberg's Lawrence "Larry" Mattera Jr. and custodians[13]: Corresponded with Mr. Foster on valuations; essential for conflicting BVAL postings and government influence issues.

---

[11] Flagstar Bank and its Executive Management (Jim Caroli CFO, Alessandro DiNello CEO, Toby Thomas CIO, and Lee Smith COO) are in possession of direct information/knowledge that Mr. Marsh did not have as he stated in his sworn deposition testimony in reply to Mr. Brown's questions: i) *"Q. Okay. Who ultimately made the decision to run the Article 9 sale and to sell the Live Well bonds? "It would have been the CEO, the CFO, the COO. So Jim Ciroli was our CFO. Alessandro DiNello, CEO. Lee Smith, COO."*; ii) *"Q. Do you know who at Flagstar reviewed the proposed trade tickets when the bonds were sold? A. It would be Toby Thomas. Q. And what's their title? A. Chief investment officer."* These decisions made by Flagstar Bank and its Executive Management caused their own losses which directly impacted all counts in the case.

[12] Helios Strategic Advisors LLC (Mr. Oliver Dupiton & Mr. Tol Ho) is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. According to Bloomberg's counsel, Helios was allegedly a supplier of bond quotes to Bloomberg on HECM IO bonds, yet Bloomberg failed to produce any evidence in its production to Defendant Hild of Helios having produced broker quotes; only evidence of Mr. Dan Foster was supplied by Bloomberg, thereby contradicting Bloomberg's story, as conveyed by its counsel.

[13] Bloomberg's Lawrence "Larry" Mattera Jr. is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. Mr. Mattera is the individual at Bloomberg who corresponded with Mr. Dan Foster and accepted/used Mr. Foster's broker quotes in posting conflicting valuations at approximately half the value of IDC's valuations in Bloomberg's BVAL system, which in turn were used in order to place i) Live Well into default with its lenders, ii) then place Live Well into bankruptcy, iii) and then were used to "evidence" the alleged inflated IDC valuations in the criminal trial which led to conviction (upon which Mr. Carickhoff relies and refers to continuously in the filings in this case). The Hilds must ask Mr. Mattera about this evidence, including some of which has already been provided in the filings in this case.

- Documents from David Carickhoff[14], Live Well Trustee: Possesses emails, chat messages, and corporate documents of key individuals.

- Documents/deposition from William Donnelly, Tom McGonigle, Kevin Muldowney[15]: Former counsel to Defendant Hild; advice relied upon for actions alleged in the complaint, and is also essential for valuation disputes.

- Documents/deposition Xavier Donaldson[16]: Former counsel to Mr. Stumberger; recipient of alleged threats from the Southern District of New York ("SDNY").

- Documents/deposition SDNY and its staff[17]: Documents and testimony related to SDNY communications and alleged threats related to Mr. Stumberger's plea.

- Limited discovery/deposition from Eric Rohr, related to auditor communications, lender communications, communications with staff about the bonds; essential for valuation disputes, default causation, and lender "losses."

---

[14] David Carickhoff, Live Well Trustee, is in possession of documents and information that must be obtained in document production related to the allegations in the complaint. All of Michael Hild's, Mr. Stumberger's, Mr. Haddock's, Mr. Foster's, Mr. Evans' and Mr. Rohr's emails, Bloomberg chat messages, and corporate documents are in Mr. Carickhoff's possession. The Hilds cannot defend this case without access to these communications.

[15] William Donnelly and Tom McGonigle, and Kevin Muldowney, Michael Hild's former counselors, are in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint. Mr. Hild relied on counsel for the action, or lack thereof, which Mr. Carickhoff alleges in its complaint and which were used to "evidence" the alleged fraud in the criminal trial which led to conviction (upon which Mr. Carickhoff relies and refers to continuously in filings in this case).

[16] Xavier Donaldson, former counsel to Mr. Stumberger (a codefendant in the case) is in possession of documents and information that must be obtained in document production and via deposition specifically as it pertains to Mr. Stumberger's claim that Mr. Donaldson is the person to whom the SDNY has communicated threats related to participating in the defense of this case as it pertains to Mr. Stumberger's apparently coerced/cajoled guilty plea and corresponding admission to commit fraud, which has now been controverted with conflicting statements by Mr. Stumberger related to communications made in this case as has already been supplied to this Court in this case.

[17] SDNY and its staff is in possession of documents and information that must be obtained in document production and via deposition related to the allegations in the complaint, and also more recently pertaining to the communications which Mr. Stumberger has cited from the SDNY who threatened him via his former attorney, Xavier Donaldson, related to participating in the defense of this case as it pertains to Mr. Stumberger's apparently coerced/cajoled guilty plea, and corresponding admission to allegedly commit "fraud" which has now been controverted with conflicting statements by Mr. Stumberger related to communications and statements made in this case, and has already been supplied to this Court.

## Certificate of Service

I hereby certify that on November 28, 2025, I served the foregoing document via U.S. Mail on the Court and email on all counsel of record, including:

- Stanley B. Tarr, stanley.tarr@blankrome.com
- Lorenzo R. Thomas III, lorenzo.thomas@blankrome.com
- Michael B. Schaedle, mike.schaedle@blankrome.com
- Michael D. Silberfarb, michael.silberfarb@blankrome.com
- Bryan J. Hall, hall@chipmanbrown.com
- Charles Darren Stumberger cdjs2013@gmail.com

_____  
Michael C. Hild

_____  
Laura D. Hild

10

If discovery from the above leads to identification of additional essential witnesses or document holders, the Hilds respectfully request the right to seek further leave upon showing good cause.

## IV. RELIEF REQUESTED

WHEREFORE, the Hilds respectfully request that the Court enter the proposed Order attached hereto as **Exhibit A** granting the Motion in full.

Dated: November 28, 2025

*Michael C. Hild*
Michael C. Hild
2302 E Marshall Street
Richmond, VA 23223
michaelchristopherhild@gmail.com
(804) 306-4314

*Laura D. Hild*
Laura D. Hild
2302 E Marshall Street
Richmond, VA 23223
luludyer@yahoo.com
(804) 873-8384

**EXHIBIT A**
**PROPOSED ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS) |
| DAVID W. CARICKHOFF, solely in his capacity as chapter 7 trustee of Live Well Financial, Inc.,<br><br>Plaintiff,<br><br>- against -<br><br>MICHAEL C. HILD, LAURA D. HILD, CHURCH HILL VENTURES LLC, ANDERSON'S NECK LLC, THE BUTTERBEAN LLC, CLIMAX BEVERAGE CO. LLC, DOGTOWN BREWING LLC, GARDENIA LLC, HOT DIGGITY DONUTS LLC, KINGFISHER LLC, MANASTOH BREWING LLC, URBAN BLEAT CHEESE CO. LLC, ARAGON COFFEE CO. LLC, PETER STUMPF BREWING COMPANY LLC, PIN MONEY PICKLES LLC, ROSENEGK BREWING CO. LLC, VALENTINE'S MEAT-JUICE COMPANY LLC, ERIC G. ROHR, and C. DARREN STUMBERGER,<br><br>and<br><br>JOHN DOES 1-100;<br><br>Defendants. | Adv. Pro. No. 21-50966 (LSS)<br><br>(Jury Trial Demanded) |

**ORDER GRANTING PRO SE DEFENDANTS MICHAEL C. HILD AND LAURA D. HILD'S MOTION FOR LEAVE TO REOPEN DISCOVERY AND MODIFY SCHEDULING ORDER**

This matter comes before the Court on the Motion of pro se Defendants Michael C. Hild and Laura D. Hild for Leave to Reopen Discovery and Modify Scheduling Order pursuant to Fed. R. Bankr. P. 7016 and Fed. R. Civ. P. 16(b)(4) (the "Motion"). The Court has reviewed the Motion, the supporting materials, and the record in this case. For good cause shown, including the Hilds' diligence in proceeding pro se after the

withdrawal of their former counsel, the absence of undue prejudice to Plaintiff Trustee, and the need to ensure a fair adjudication on the merits,

**IT IS HEREBY ORDERED** that:

1. The Motion is **GRANTED**.

2. All expired deadlines in prior scheduling orders are **VACATED**.

3. Fact discovery is reopened for a period of **180 days** from the date of this Order. During this period, the Hild Defendants may serve requests for production of documents and conduct depositions on the parties and third-party witnesses identified in the Motion, including but not limited to: Charles Darren Stumberger, Matt McDonald and Keiter, Dan Foster, Kirk Evans, Chris Krupa (and IDC/ICE/Intercontinental Exchange), Securities and Exchange Commission staff (Greg Smolar, Reid Muoio, Jeffrey Leisure, and Jay Clayton), Dani James, Wedbush Securities (Scott Skyrym, Jim Kearney, and David Weaver), Industrial and Commercial Bank of China, Mirae Asset Securities, Mizuho Bank, Customers Bank, Flagstar Bank and its executive management (Jim Ciroli, Alessandro DiNello, Toby Thomas, and Lee Smith), Helios Strategic Advisors LLC (Oliver Dupiton and Tol Ho), Bloomberg (Lawrence "Larry" Mattera Jr.), David Carickhoff (Live Well Trustee), Eric Rohr, William Donnelly, Tom McGonigle, Kevin Muldowney, Glen Haddock, Xavier Donaldson, and the Southern District of New York and its staff.

4. The stay on pro se discovery contained in this Court's Order at D.I. 215 is **LIFTED**.

5. If discovery from the above parties leads to the identification of additional relevant witnesses or document holders, the Hild Defendants may seek leave from the Court to conduct further

discovery from those parties, upon a showing of good cause.

6. Expert deadlines shall be as follows:

    a. Hild Defendants' opening expert reports: 60 days after close of fact discovery

    b. Trustee's rebuttal expert reports: 45 days thereafter

    c. Expert depositions completed: 45 days thereafter

7. Dispositive motion deadline: 30 days after close of expert discovery.

8. A telephonic status conference shall be held on _____ at : _.m. to set remaining pretrial deadlines and trial date.

9. The Hild Defendants shall serve a copy of this Order on all relevant parties and third parties subject to discovery.

**IT IS SO ORDERED.**

Dated: _____, 2025

_____
Hon. Laurie Selber Silverstein
United States Bankruptcy Judge

U.S. POSTAGE PAID
PM
RICHMOND, VA 23223
NOV 28, 2025
**$16.10**
S2322S500709-41

19801

7 Lb 6.4 Oz

Retail

RDC 03

EXPECTED DELIVERY DAY: 12/01/25

USPS TRACKING® #

9505 5147 8766 5322 7018 40



TO: CLERK OF COURTS
3RD FLOOR
824 North Market Street
Wilmington, DE 19801

FROM: HUD
702 E. Marshall St.
Richmond VA 23223