## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LIVE WELL FINANCIAL, INC.,<br><br>Debtor. | Chapter 7<br><br>Case No. 19-11317 (LSS) |
| DAVID W. CARICKHOFF, as Chapter 7 Trustee of LIVE WELL FINANCIAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL C. HILD, LAURA D. HILD, CHURCH HILL VENTURES LLC, ANDERSON'S NECK LLC, THE BUTTERBEAN LLC, CLIMAX BEVERAGE CO. LLC, DOGTOWN BREWING LLC, GARDENIA LLC, HOT DIGGITY DONUTS LLC, KINGFISHER LLC, MANASTOH BREWING LLC, URBAN BLEAT CHEESE CO. LLC, ARAGON COFFEE CO. LLC, PETER STUMPF BREWING COMPANY LLC, PIN MONEY PICKLES LLC, ROSENEGK BREWING CO. LLC, VALENTINE'S MEAT-JUICE COMPANY LLC, ERIC G. ROHR, and C. DARREN STUMBERGER,<br><br>and<br><br>JOHN DOES 1-10,<br><br>Defendants. | Adv. Pro. No. 21-50966 (LSS)<br><br>Re: Docket No. 105 |

## OPINION

The Hild Entities[1] seek an order quashing or canceling memoranda of lis pendens

filed by David M. Carickhoff ("Trustee") in his capacity as chapter 7 Trustee of Live Well

---

[1] Church Hill Ventures LLC, Anderson's Neck LLC, The Butterbean LLC, Climax Beverage Co. LLC, Dogtown Brewing LLC, Gardenia LLC, Hot Diggity Donuts LLC, Kingfisher LLC,

Financial, Inc.'s estate against certain real property located in Richmond, Virginia.[2]  The

Hild Entities assert Trustee lacked legal authority to file the memoranda under Virginia law.

Trustee responds that his filings are justified because he seeks a declaratory judgment that

the real property at issue is held in a constructive or resulting trust for the benefit of the

chapter 7 estate as it was purchased with funds Mr. Hild wrongfully received from Live

Well.  The fundamental question is whether, as a matter of law, seeking a constructive or

resulting trust based on misappropriated funds traced directly to real property constitutes

"an interest" in real property recognized under the Virginia lis pendens statute such that a lis

pendens is properly filed.  Because I conclude it is, I will deny the Motion.

**Background**[3]

        This adversary proceeding is one part of a complex web of litigation surrounding the

downfall of Live Well Financial, Inc. ("Debtor"), the full history of which is not relevant to

the question presented.[4]  Broadly speaking, Trustee seeks to recover tens of millions of

dollars from Defendants based on an alleged scheme to enrich themselves at Debtor's

---

Manastoh Brewing LLC, Urban Bleat Cheese Co. LLC, Aragon Coffee Co. LLC, Peter Stumpf
Brewing Company LLC, Pin Money Pickles LLC, Rosenegk Brewing Co. LLC and Valentine's
Meat-Juice Company LLC.

[2]  Mot. of Hild Entities to Quash or Cancel Notice of Lis Pendens, Dkt. No. 105 ("Motion").  Unless
otherwise stated, all docket citations are to the adversary proceeding docket.

[3]  When determining whether an action seeks to establish an interest in real property under Virginia
law, "the allegations in the bill of complaint will be taken as a correct statement of fact." *Lee v.
Garrett Homes of Virginia, L.C.*, 60 Va. Cir. 235, at *1 (2002).  *See also* Fed. R. Civ. P. 52(a)(3), made
applicable by Fed. R. Bankr. P. 7052 ("The court is not required to state findings or conclusions
when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other
motion.").

[4]  A more detailed recitation of the factual issues underlying this dispute is found in the Complaint,
Dkt. No. 1.  *See also Carickhoff v. Wedbush Secs., Inc. (In re Live Well Fin., Inc.)*, 652 B. R. 699 (Bankr.
D. Del. 2023); *Carickhoff v. Cantor (In re Live Well Fin., Inc.)*, Case No. 19-11317, Adv. Pro. No. 21-
50990, 2023 WL 3995900 (Bankr. D. Del. June 13, 2023).

expense.  Trustee sues Defendants in nineteen Counts, including for breaches of fiduciary duty, aiding and abetting breaches of fiduciary duty, and avoidance and recovery of fraudulent, preferential and otherwise unauthorized transfers.

Of particular relevance here, Trustee alleges that from 2015 through 2019 Mr. Hild orchestrated and perpetrated a "pervasive fraud" through which he "extracted more than $26 million from Live Well" in breach of his fiduciary duties by paying himself "grossly excessive overcompensation."[5] Trustee alleges that these funds were initially transferred to a joint bank account held with Mrs. Hild at Wells Fargo Bank and from there transferred to the Hild Entities and their businesses.  Trustee specifies that:

> In particular, at least $22.5 million that Michael Hild obtained from Live Well, as a result of his breaches of duty and criminal and fraudulent conduct, is directly traceable to the Subject Real Properties in the form of purchase price payments, construction loan payments, and payments to numerous contractors, architects, designers and other professional firms as well as equipment purchased for and installed at the Subject Real Properties.  In short, the Subject Real Properties were purchased, renovated, and operated with funds Michael Hild obtained by defrauding Live Well's bond lenders and breaching his duty to Live Well and which Hild looted from Live Well to enrich himself, his wife, and their wholly owned entities.[6]

In addition to other remedies, in Count XIV, Trustee seeks a declaration that:

> Michael Hild, Laura Hild, and the Hild Entities hold[] all of their assets that are traceable to the fruits of the fraud and breaches of duty, including without limitation the Subject Real Properties, in a constructive or resulting trust for the benefit of the Trustee on behalf of the Live Well chapter 7 estate, and . . .that all such assets, including without limitation the Subject Real Properties, constitute property of the Live Well bankruptcy estate.[7]

---

[5] Compl. ¶¶ 5, 432.

[6] Compl. ¶ 434. The Subject Real Properties as defined in the Complaint constitute sixty-three (63) separate parcels of land located in Richmond, Virginia. Compl. ¶¶ 248-250. The real estate at issue here is a subset of these properties.

[7] Compl. ¶ 437.

In furtherance of the relief requested in the Complaint, Trustee filed at least seventeen memoranda of lis pendens for parcels of real property titled in the names of Defendants Church Hill Ventures LLC and Kingfisher LLC (collectively, "Lis Pendens Properties").[8] Each memorandum of lis pendens gives notice of this adversary proceeding and Trustee's request for the establishment of a constructive trust.[9]

**Procedural Posture**

The Hild Entities filed their Motion on October 27, 2023.  Trustee timely filed his Objection.[10]  I heard oral argument on April 8, 2024.  At the conclusion of the hearing, I requested post-hearing briefing on the scope of Virginia's lis pendens statute, including whether the constructive trust sought by the Complaint constitutes an interest in real property as required therein.  The submissions were made and the matter is now fully briefed and ripe for decision.[11]

**Jurisdiction**

Jurisdiction exists because this adversary proceeding is at least related to the bankruptcy case.[12]

---

[8] Mot., Ex. A, Dkt. No. 105-1.

[9] Mot., Ex. A.

[10] Chapter 7 Tr.'s Obj. to Mot. of Hild Entities to Quash or Cancel Notice of Lis Pendens, Dkt. No. 107.

[11] Chapter 7 Tr.'s Post-Hr'g Mem. of Law in Opp'n to Mot. of Hild Entities to Quash or Cancel Notice of Lis Pendens, Dkt. No. 155 ("Tr.'s Post-Hr'g Mem."); Mem. of Law in Supp. of Mot. of Hild Entities to Quash or Cancel Notice of Lis Pendens, Dkt. No. 158 ("Movants' Post-Hr'g Mem."); Chapter 7 Tr.'s Post-Hr'g Reply in Further Opp'n to Mot. of Hild Entities to Quash or Cancel Notice of Lis Pendens, Dkt. No. 162 ("Tr.'s Post-Hr'g Reply").

[12] 28 U.S.C. § 1334(b).  Notwithstanding that jurisdiction exists, I note that only Kingfisher and Church Hill Ventures have standing to bring the Motion as the only properties against which the Hild Entities claim Trustee filed memoranda of lis pendens are owned by those defendants.  Further, while the Hild Entities assert memoranda of lis pendens were filed with the property records for

**Discussion**

## I.    The Parties' Positions

Trustee asserts that, accepting the allegations in his Complaint as true, he has stated a claim for an equitable interest in the Lis Pendens Properties.  He argues that (i) "[t]he Complaint, at a minimum, asserts an equitable interest" in the Lis Pendens Properties[13] and (ii) he has established a sufficient basis to file a memorandum of lis pendens based on the equitable relief sought in Count XIV.[14]  Therefore, Trustee contends that he "seeks . . . to establish an interest . . . in the real property" consistent with the plain language of Virginia's lis pendens statute.[15]  Trustee implies—but does not explicitly argue—that this should end my analysis.[16]

Movants attempt to factually distinguish the instant matter from the Virginia decisions cited by Trustee and insist the statute requires further analysis.  They contend that in all of the Virginia lis pendens cases cited by the Trustee, the heart of the underlying action is a dispute regarding the real property against which the lis pendens was filed (such as title, possession or other contractual dispute).  Movants argue that the underlying controversy here is not about the real property itself, but rather about the alleged "grossly excessive

---

parcels held by both Kingfisher LLC and Church Hill Ventures LLC on December 22, 2022 and January 10, 2023, the documents attached to the Motion as Exhibit A were filed on December 22, 2022 and relate only to property held by Kingfisher LLC.  *Id.* at Ex. A.  Trustee has not disputed the Hild Entities' assertions, so I take them as true for the purposes of this opinion.

[13] Obj. ¶ 32.

[14] Tr.'s Post-Hr'g Mem. ¶ 28.

[15] Va. Code Ann. § 8.01-268(B) (West 2025).

[16] *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) (stating that where the plain language of a statute is "'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'" (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004))).

compensation" that Mr. Hild extracted from Live Well. As such, the relationship of the underlying action to the real property is more attenuated. Said another way, neither Live Well nor the Live Well chapter 7 estate ever owned or possessed the Lis Pendens Properties. As a result, Movants assert Trustee merely seeks to secure prejudgment attachment against the Lis Pendens Properties in anticipation of a money judgment in this adversary proceeding—an unauthorized use of lis pendens under Virginia law.[17]

In response, Trustee argues he has established a sufficient relationship to support filing lis pendens by tracing the proceeds of Mr. Hild's fraud to the Lis Pendens Properties.[18]

## II.    Analysis

### A. Trustee's Allegations, if True, Support the Imposition of Constructive Trust under Virigina Law

In the Complaint, Trustee seeks a declaration that the Lis Pendens Properties are held in a constructive or resulting trust.[19] The Hild Entities do not argue that Trustee cannot seek the requested relief or that I could not grant such relief after a sufficient evidentiary showing.

Under Virginia law, imposition of a constructive or resulting trust on fraudulently obtained property or its proceeds is a valid remedy and creates an equitable interest in

---

[17] *See Preston's Drive Inn Rest., Inc. v. Convery*, 154 S.E.2d 160, 163 (Va. 1967). *See also* Va. Code Ann. § 8.01-534 (2025) (listing grounds for an action for pretrial levy, seizure or attachment).

[18] Tr.'s Post-Hr'g Mem.¶¶ 24, 28-29. *See also* Compl. ¶ 433 ("Virtually all of the fruits of Hild's fraud were transferred, first, to the joint bank account Michael Hild and Laura Hild had at Wells Fargo Bank, and from there, to the Hild entities, their businesses, and the Subject Real Properties.").

[19] Fourteenth Cause of Action pursuant to 28 U.S.C. § 2201(a) ("[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.").

property.[20]  A constructive trust arises by operation of law in order to prevent fraud; the

intention of the parties is not the operative factor.[21]  When funds have been

misappropriated, such funds must be "distinctly traced" into the property over which the

constructive trust is sought.[22]  At trial, the request for a constructive trust must be supported

by clear and convincing evidence.[23]

The Complaint states facts supporting allegations of fraudulent transfers or otherwise

avoidable transactions by Mr. Hild, including not less than $26,051,622.99 in the form of

guaranty fees, director fees, excessive salary and unjustified bonuses.[24]  The Complaint also

pleads facts which support Trustee's allegation that money "obtained from Live Well, as a

result of [Mr. Hild's] breaches of duty and criminal and fraudulent conduct, is directly

traceable to the [Lis Pendens Properties] . . . ."[25]  To support the allegations in the

Complaint, Trustee attached records of transfers from Live Well to the Hilds' joint checking

account,[26] transfers from the Hilds' joint checking account to certain of the Hild Entities[27]

and transfers from Church Hill Ventures to other of the Hild Entities.[28]  Trustee also

---

[20] *See Crestar Bank v. Williams*, 462 S.E.2d 333, 335 (Va. 1995) (holding a constructive trust can be imposed under Virginia law as a remedy for fraudulent transfers or based on general equitable principles).

[21] *Id.*

[22] *Id.* (quoting *Watts v. Newberry*, 57 S.E. 657, 659 (1907)).

[23] *Crestar Bank*, 462 S.E.2d at 335.

[24] *See, e.g.*, Compl. ¶¶ 148-154, 160-163.

[25] Compl. ¶ 434.

[26] Compl. Ex. A.

[27] Compl. Ex. B.

[28] Compl. Ex. C.

contextualized the transfers by providing timelines of transfers from Live Well to the Hilds'

joint account, from the joint account to one of the Movants and from a Movant into one of

the Lis Pendens Properties.[29]

Trustee has stated a plausible claim for a constructive trust under Virginia law and

pled sufficient facts to support his tracing allegations at this stage of the proceeding.

**B. Origin and Purposes of Lis Pendens in Virigina**

Section 286(B) of Title 8.01 of the Code of Virginia permits the filing of a lis pendens

in only four circumstances:

> No memorandum of lis pendens shall be filed unless the action on which the
> lis pendens is based seeks (i) to establish an interest by the filing party in the
> real property described in the memorandum, (ii) to sell the real property to
> enforce a lien for delinquent taxes pursuant to the provisions of Article 4 . . . of
> Chapter 39 of Title 58.1 or a docketed judgment lien, (iii) the partition of real
> property pursuant to Article 9 . . . of Chapter 3 of Title 8.01, or (iv) to enforce
> a zoning ordinance.

Neither the parties nor independent research identified any Virginia authority—much less a

Virigina Supreme Court decision—applying § 268(B) to a scenario in which allegedly ill-

gotten funds are traced to real property otherwise unrelated to the underlying wrongdoing.

In these circumstances, I am forced to predict how the Virginia Supreme Court would

---

[29] Compl. ¶¶ 241-248, 250-251.

> As just one example, on February 18, 2016, Live Well made a $776,997.39
> transfer to the Hilds' joint bank account at Wells Fargo.  Upon information and belief,
> that transfer represented a portion of [Mr.] Hild's 2015 bonus.  That same day, the
> sum of $775,000 was transferred from the Hilds' joint account to Church Hill Ventures'
> account at Virginia Credit Union.  Over the next month, Church Hill Ventures used
> approximately $748,000 of those funds to purchase several properties located in
> Richmond, Virginia (1209 Hull Street, 12 W. 12th Street, 16 W. 12th Street, and 1213
> Hull Street).

Compl. ¶ 242.

rule.[30] To do so, I

> must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered *dicta*, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.[31]

Lis pendens—literally "suit pending"—is a longstanding common law doctrine which renders the sale of real property disputed in ongoing litigation subject to the entry of a final judgment in that litigation.[32] Under the doctrine, the mere filing of a suit concerning real property was deemed sufficient notice to bind a subsequent bona fide purchaser, even if he had no knowledge of the suit.[33] The purpose of the doctrine was to facilitate the court's ability to enforce its judgment through execution process.[34]

The Virginia legislature codified the doctrine of lis pendens to ameliorate the harshness of the effect of the common law lis pendens on subsequent innocent purchasers (i.e., those unaware of the lawsuit concerning the real properly).[35] The statute requires the recording of a notice of pending litigation in the clerk's office of the circuit court of the city or county where the property at issue is located in order to bind a subsequent bona fide

---

[30] *Chorman v. Foamex Int'l, Inc. (In re Foamex Int'l, Inc.)*, 491 B.R. 100, 106 (Bankr. D. Del. 2013).

[31] *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (quoting *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 164 (3d Cir. 2011)). While the history of the statute is not listed among the enumerated sources, I explore it to place the statute in context.

[32] 12A Michie's Jurisprudence of Virginia & West Virginia *Lis Pendens* § 2 (2025) (citing cases as early as 1823).

[33] *Id.*

[34] *Id.* ("The object of [common law lis pendens] is to preserve the property which is subject to litigation, so as to enable the court . . . to execute its judgment or decree.") (citing cases).

[35] *See Palm Harbor Homes, Inc. v. Leader Funding, Inc.*, 70 Va. Cir. 31, at *2 (2005).

purchaser.[36] Now, for a purchaser to be bound, a lis pendens must be recorded or the

purchaser must have actual knowledge of the pending litigation.

The current version of Virginia's lis pendens statute is the result of a modification

following the 1982 decision of the United States Bankruptcy Court for the Eastern District

of Virigina in *Hart*.[37] There, the court read the then-existing version of Virginia's lis pendens

statute broadly, not limited to suits that directly involved real property.[38] It also read the lis

pendens statute in conjunction with Virginia's judgment lien statute (which automatically

imposes a lien on real property on the entry of a judgment) to conclude that any lawsuit

could be the basis for a filing of lis pendens.[39] Concluding that this application was too

broad, the Virginia General Assembly mandated that the underlying lawsuit must seek "***to

establish an interest***" in the real property that is the subject of the lis pendens. Thus, since its

codification, it is clear that a lis pendens is not properly recorded where a plaintiff merely

seeks a monetary judgment.[40]

Moreover, with its codification, the lis pendens doctrine has two goals under Virginia

law: to ensure that (i) the court can execute a judgment against real property (the common

---

[36] Va. Code Ann. § 8.01-268(A) (West 2025) ("No lis pendens . . . shall bind or affect a subsequent
bona fide purchaser of real . . . estate for valuable consideration and without actual notice of such lis
pendens" until a memorandum of lis pendens is properly recorded). *See also Preston's Drive Inn Rest.,
Inc. v. Convery*, 154 S.E.2d 160, 163 (Va. 1979) (Virginia's lis pendens statute "permits the filing of a
Lis pendens to give notice to anyone who might deal with the property in the pending litigation.");
12A Michie's Jurisprudence of Virginia & West Virginia *Lis Pendens* § 2 (2025).

[37] *Hart v. United Va. Bank (In re Hart)*, 24 B.R. 821 (Bankr. E.D. Va. 1982).

[38] *Hart*, 24 B.R. at 824.

[39] *Id.* (citing Va. Code §§ 8.01-268, 458 (1977) and holding that "any suit in which the defendant is
an individual has the potential to affect the title to real estate.").

[40] *Cadle Co. II, Inc. v. Superior Constr. & Contracting, Inc. (In re Rice)*, 362 B.R. 687, 689 (Bankr. E.D.
Va. 2006).

law goal) and (ii) the litigation can be enforced against a third party (the statutory goal).[41]

Neither the Virginia common law doctrine nor the statute expressly evinces a concern for

the de facto restraint on alienation of property a notice of lis pendens imposes. But, while

no process is spelled out, the statute recognizes that a lis pendens may be quashed or

dismissed and that the court may in appropriate cases impose sanctions under Virigina's

Rule 11 equivalent.[42]

Notably, even in the face of *Hart*, the Virginia General Assembly did not amend the

statute to limit the availability of a lis pendens to causes of action based solely on title

disputes. Typically, states apply one of two standards for filing notice of lis pendens: the

underlying action must (i) affect title[43] ("Title State") or (ii) seek to establish an interest in

---

[41] *Palm Harbor Homes*, 70 Va. Cir., at *2 ("'to ensure that litigation regarding property ownership continue uninterrupted such that any relief granted in the litigation may be enforced against the property owner,' even if the property is transferred to a third party while the litigation is ongoing'") (quoting *Meliani v. Jade Dunn Loring Metro, L.L.C.*, 286 F.Supp. 2d 741, 744 (E.D. Va. 2003)). In construing a remedial statute, one should consider the old law, the concern to be remedied and the remedy. 12A Michie's Jurisprudence of Virginia & West Virginia *Lis Pendens* § 4. The "remedy" enacted through the Virginia lis pendens statute does not abrogate the original purpose of the common law doctrine.

[42] Va. Code Ann. § 8.01-269 (West 2025).

[43] *See, e.g.*, Cal. Civ. Proc. Code § 405.4 (West 2025) ("the cause or causes of action in a pleading which would, if meritorious, affect . . . title to, or the right to possession of, specific real property . . . .") (California); Colo. Rev. Stat. Ann. § 38-35-110 (West 2025) ("wherein relief is claimed affecting the title to real property . . . .") (Colorado); V.I. Code Ann. tit 28, § 130 ("actions affecting title to real estate . . . .") (American Virgin Islands); Nev. Rev. Stat. Ann. § 14.010(1) (West 2025) ("affecting the title or possession of real property . . . .") (Nevada); N.Y. C.P.L.R. 6501 (McKinney 2025) ("affect the title to, incumbrance of, or the possession, use or enjoyment of, real property . . . .") (New York); N.D. Cent. Code Ann. § 28-05-07 (West 2025) ("affecting the title to real property . . . .") (North Dakota); N.C. Gen. Stat. Ann. § 1-116(a)(1) (West 2025) ("Actions affecting title to real property.") (North Carolina); Wash. Rev. Code Ann. § 4.28.320 (West 2025) ("affecting title to real property . . . .") (Washington); Haw. Rev. Stat. Ann. § 634-51(a) (West 2025) ("In any action concerning real property or affecting title or the right of possession of real property . . . .") (Hawaii); Alaska Stat. Ann. § 09.45.940 (West 2025) ("In an action affecting the title to or the right of possession of real property . . . .") (Alaska); Ariz. Rev. Stat. Ann. § 12-1191(A) (2025) ("In an action affecting title to real property . . . .") (Arizona).

real property ("Interest State").[44]  The Virginia lis pendens statute falls squarely in the second category.

## C. Virginia Case law

What constitutes an "interest in real property" under the statute has been characterized as "murky"[45] and a "gray area."[46]  Nonetheless, most Virigina courts appear to see "interest" as an expansive concept.  An "interest" sufficient to support a lis pendens includes a lawsuit to determine title to real property, but is not limited to that.[47]  Multiple courts have held that equitable interests suffice even where the plaintiff also (or even primarily) seeks to recover a money judgment.[48]

For example, in *Garrett Homes*, plaintiffs sued to recover funds they had paid to defendant as a deposit on a home to be built on land they had also conveyed to the defendant for that purpose.  The court upheld a lis pendens on the land in question, concluding that an equitable interest was still an interest within the meaning of the statute,

---

[44] *See, e.g.*, Tex. Prop. Code Ann. § 12.007(a) (West 2025) ("the establishment of an interest in real property . . . .") (Texas); Wis. Stat. Ann. § 840.10(1)(a) (West 2025) ("In an action where relief is demanded affecting described real property which relief might confirm or change interests in the real property . . . .") (Wisconsin); Minn. Stat. Ann. § 557.02 (West 2025) ("actions in which the title to, or any interest in or lien upon, real property is involved or affected, or is brought in question by either party . . . .") (Minnesota); Or. Rev. Stat. Ann. § 93.740(1) (West 2025) ("title to or any interest in or lien upon real property is involved, affected, or brought in question . . . .") (Oregon).

[45] *Republic Servs. of Va., LLC v. Am. Timberland, LLC*, No. 6:06-CV-00041, 2006 WL 3421840, at *1 (W.D. Va. Nov. 28, 2006).

[46] *Palm Harbor Homes, Inc. v. Leader Funding, Inc.*, 70 Va. Cir. 31, at *4 (2005).

[47] *Id.* ("It seems somewhat strained . . . that lis pendens are only allowable in suits where one party is attempting to take control of the title to a property. . . . a party can have an interest in property without seeking title to it.") (discussing the plain meaning of Va. Code § 8.01-268(B) (Michie 2000).

[48] *DRHI v. L'Ambiance Assocs., Inc.*, 39 Va. Cir. 434, at *1 (1996) (allowing lis pendens based on vendee's lien, which is an equitable lien under Virginia law); *Palm Harbor Homes*, 70 Va. Cir. , at *1 (allowing lis pendens based on constructive trust or equitable lien on "funds allocated towards the purchase price or the proceeds of the sale of the property.").

even if validating an interest in real property was not the principal aim of the litigation.[49]

Similarly, in *Abujaber*, plaintiff asserted fraud and breach of fiduciary duty claims in

connection with the sale of stock in an entity that held a parcel of land in Virigina.[50] While

sparsely reasoned, the court held that plaintiff had clearly stated his intent to seek an interest

in property by alleging a constructive trust and upheld the lis pendens.[51] And, in *Labovitz* the

court refused to quash a lis pendens on real property held by a corporate entity when the

United States sued seeking a declaratory judgment that the defendants' sale of their

membership interests in that entity constituted a fraudulent conveyance.  The court

concluded that the lawsuit sought relief regarding an interest in real property because the

alleged fraudulent conveyance was of the defendants' ninety-nine percent membership

interest in the entity that owned the subject property.[52]

---

[49] *Lee v. Garrett Homes of Va., L.C.*, 60 Va. Cir. 235, at *1 (2002).  *See also Palm Harbor Homes*, 70 Va. Cir. (home builder's request for a constructive trust or equitable lien on property home purchaser deeded to lender in lieu of foreclosure held to support filing of a lis pendens; home builder asserted it held title to property, the full purchase price was not paid and lender was attempting to sell property to third party).

[50] *Abujaber v. Kawar*, In Chancery No. 11514, 1989 WL 646276, at *4 (Va. Cir. Ct. May 24, 1989) (allowing lis pendens based on alleged constructive trust over real property held by a trust in which the defendant had an interest through multiple entities).

[51] *Id.* (reasoning that defendant's argument that no constructive trust could be imposed on the subject real property as a matter of law was a merits issue and could not be decided on a motion to quash).  *See also Dworsky v. Cohen*, 63 Va. Cir. 65, at *1-2 (2003) (upholding lis pendens filed by one-sixth beneficiary of trust who sought to "establish [an] interest [for purposes of the lis pendens statute] by preventing the disposal of the only asset of the trust, the real property.").

[52] Transcript of Motion Hearing at 17:15-21, *United States v. Labovitz*, No. 23-cv-00924 (E.D. Va. Feb. 9, 2024), Dkt. No. 35 (Vaala, Mag. J.) (allowing lis pendens based on action seeking declaratory judgment that the transfer of partnership interests in a limited partnership holding the subject real property was a fraudulent conveyance) *aff'd* 719 F.Supp. 3d 500 (E.D. Va 2024).  *But see O'Bryan v. O'Bryan*, In Chancery No. 116229, 1992 WL 884996, at *2 (Va. Cir. Ct. Oct. 30, 1992) (quashing lis pendens based on action to render plaintiff the sole residual beneficiary of a trust holding real property; "he would only be entitled to the residuary of the Trust after the debts and expenses of the Trust had been paid.  His right, if any, [was] to personalty, rather than to real property.").

A Virginia bankruptcy court has held an arguably more attenuated relationship between the real property and the underlying dispute to be sufficient for the filing of a lis pendens. In *Rice*, a prepetition judgment creditor sought to pierce the corporate veil of a corporation wholly owned by an individual (Rice), now a debtor in bankruptcy. The judgment creditor filed an adversary proceeding seeking a determination that its judgment lien against Rice attached to a specific piece of real estate owned by the corporation.[53] The court ruled that this lawsuit, which focused on specific real estate, was an action that sought to establish an "interest in that property" for purposes of Virginia's lis pendens statute. The court also specifically observed that the judgment creditor already had a judgment against Rice, was not looking for a general judgment against all of Rice's property and that this was a matter of execution on the prepetition judgment.[54]

The primary boundary Virginia courts place on lis pendens is that the relief requested must relate to the subject real property. In *Hellberg*, the court found that even though the plaintiff asserted rights under a covenant that ran with the land, the relief sought was a money judgment and an injunction. Neither related to an interest in real property, so the court quashed plaintiff's lis pendens.[55] In *Meliani*, plaintiff brought a breach of contract and fraud lawsuit in connection with his purchase of a townhome in phase two of a multi-phase

---

[53] *Cadle Co. II, Inc. v. Superior Constr. & Contracting, Inc. (In re Rice)*, 362 B.R. 687, 690 (Bankr. E.D. Va. 2006) (allowing lis pendens based on veil-piercing action to collect on a prepetition judgment against a debtor).

[54] The court was also concerned that the movant, a bank with a subordinate deed of trust, had knowledge of the pending litigation and wanted to quash the lis pendens in order to manufacture a situation in which it could foreclose on the property and sell it to a bona fide purchaser for value and without actual knowledge of the litigation. The court was further concerned about maintaining the status quo and ensuring any judgment could be executed. *Rice*, 362 B.R. at 688-89.

[55] *Hellberg v. Valley Hardware Co.*, 46 Va. Cir. 112, at *2 (1998) (request for damages and injunction prohibiting defendant neighbor from permitting water to flow on to plaintiff's land).

development project.  But, plaintiff filed a lis pendens against phases three, four and five of the development project.  The court quashed the lis pendens as plaintiff did not have an interest in or valid claim to any real property in phases three, four and five.[56]  In so ruling, the court reasoned that interpreting the lis pendens statute so broadly would render Virginia's attachment statutes pointless.[57]  Finally, in *Republic Services*, plaintiff filed a memorandum of lis pendens against a parcel of real property to prevent defendant from breaching its contract with plaintiff by selling the property to one of plaintiff's competitors.  The underlying lawsuit sought injunctive relief against the sale based on plaintiff's contract rights, but did not articulate any interest it sought to establish in the property.[58]  The court concluded that "Virginia law does not allow for the recordation of a Memorandum of Lis Pendens as part of an ordinary contract action unless the contract in dispute concerns some right or interest in the land which is the subject of the memorandum."[59]  The court quashed the lis pendens.

An examination of these decisions yields three factors Virginia courts use to determine if an underlying cause of action seeks to establish an interest in property for purposes of the statute: (i) whether the complaint explicitly seeks relief the court recognizes

---

[56] *Meliani v. Jade Dunn Loring Metro, LLC*, 286 F.Supp. 2d 741, 745-46 (E.D. Va. 2003) ("a plaintiff in a breach of contract and fraud action regarding the transfer of one piece of property cannot file a memorandum of *lis pendens* burdening other property owned by the defendant because the plaintiff's interest does not extend to that other property.").

[57] *Id.* at 746.

[58] *Republic Servs. of Va., LLC v. Am. Timberland, LLC*, No. 6:06-CV-00041, 2006 WL 3421840, at *1 (W.D. Va. Nov. 28, 2006).

[59] *Id.* at *3.

as an "interest in real property,"[60] (ii) whether the substantive allegations of the complaint effectively seek to establish an interest in the real property on which the lis pendens is filed and (iii) whether the challenged memorandum of lis pendens conforms with the aims of Virginia's lis pendens doctrine.

All three of these factors are met here. First, among the relief sought in the Complaint is a declaration that the Lis Pendens Properties are held in a constructive or resulting trust for the benefit of Live Well and that those properties constitute property of the Live Well estate. Trustee also seeks to have the Hild Entities transfer title of the Lis Pendens Properties to him. This relief seeks an interest in real property—i.e., title and possession. Second, the lis pendens were filed on the Lis Pendens Properties. The relief sought here is with respect to those properties. Third, the effect of Trustee's memoranda of lis pendens is consistent with the common law purpose of ensuring judgment can be executed against specific real property related to the underlying action and the statutory purpose of providing constructive notice to third parties.[61] This analysis counsels in favor of denying the motion.[62]

---

[60] Conventional interests in property include title, possession, lease, rents, remainder and executory interests and an option or mortgage in property. *Id.* at *2-3. But, failure to seek relief the court recognizes as an interest in the subject real property is not necessarily fatal. *Palm Harbor Homes*, 70 Va. Cir., at *5 (Palm Harbor asserted a constructive trust and a lien on funds "related to the property," but not on the property itself; court refused to quash lis pendens "for what could be characterized as a defect in pleading.").

[61] Indeed, Trustee alleges as a basis for denying the motion to quash that Movants are actively attempting to sell the Lis Pendens Properties. Tr.'s Post-Hr'g Reply 6-9. While Trustee's recordation of the lis pendens serves the common law and statutory purposes, attempts to sell property cannot be a reason to deny the motion. If it were, then even a lis pendens that does not meet the requisites in the statute would be sufficient. That clearly is not the case.

[62] While not necessary to the analysis, I note that Trustee's claim is neither spurious nor pretextual.

But as Movants argue, none of these cases specifically addresses the case at bar—a nineteen-count complaint by which Trustee: (i) seeks a constructive trust as a remedy on property that it never owned or to which it had a contractual right and that had not been obtained by way of a usurpation of a corporate opportunity and (ii) seeks monetary judgments against defendants based on the same underlying transfers that constitute the basis for imposing the trust.[63] The Hild Entities argue that this type of complaint really seeks damages, which makes the lis pendens look more like prejudgment attachment.  Had Movants spent the allegedly ill-gotten funds on new cars, other personalty or gambled it away, lis pendens would provide Trustee no relief.

### D. Non-Viriginia Cases

#### 1. *Miller Johnson Steichen Kinnard, Inc. v. Smith* (Minnesota, an Interest State)

Minnesota's lis pendens statute is similar to Viriginia's—a party can file a lis pendens based on "all actions in which the title to, or any interest in or lien upon, real property is involved or affected, or is brought in question by either party . . . thereto . . . ."[64]  The

---

[63] Trustee seeks judgment against Mr. Hild, Mrs. Hild and each of the Hild Entities in an amount not less than $27,544,903.63 based on the postpetition transfers identified in the Complaint, which includes amounts transferred to Church Hill Ventures LLC and Kingfisher LLC.  Trustee additionally seeks judgment against Church Hill Ventures LLC in an amount not less than $16,967,000 on account of postpetition transfers and against Kingfisher LLC in an amount not less than $1,026,700 on account of postpetition transfers.  Compl. ¶¶ B, L, S.

[64] *Miller Johnson Steichen Kinnard, Inc. v. Smith*, No. C3-02-2270, 2003 WL 21911200, at *2 (Minn. Ct. App. Aug. 12, 2003) (quoting Minn. Stat. § 557.02 (2002)) (unpublished).  Movants argue that this case should not be cited under the Minnesota statute governing unpublished opinions. *See* Movants' Post-Hr'g Mem. 13.  Movants misapprehend the relevant statute.  In pertinent part, the statute provides that "[t]he decision of the court need not include a written opinion.  A statement of the decision without a written opinion must not be officially published and must not be cited as precedent, except as law of the case, res judicata, or collateral estoppel."  Minn. Stat. Ann. § 480A.08(3)(b).  In *Smith*, the court authored a "written opinion containing a summary of the case and a statement of the reasons for its decision . . . ." *Id.* § 480A.08(3)(a).  The decision was not officially published, but that is no bar to citation under Minnesota law.  Indeed, *Smith* has been cited by the Eighth Circuit. *OnePoint Sols., LLC v. Borchet*, 486 F.3d 342, 352 (8th Cir. 2007).  Moreover,

purpose of the statute is also the same as Virigina's—to give constructive notice to third parties of the dispute over the land.[65]

In *Smith*, an employee embezzled funds from her employer and used them to purchase a townhome. The employer subsequently sued for damages and to obtain a constructive trust on the townhome. The opinion's primary focus is on the competing claim of a lender who intervened in the lawsuit to protect its mortgage, which was granted between the time the county recorder's office received the notice of lis pendens and its actual recordation. Relying on several older decisions, the court concluded that a notice of lis pendens can be based on the request for a constructive trust.[66]

Movants argue that I should distinguish *Smith* because Trustee alleges that Mr. Hild obtained the money used to acquire and improve the Lis Pendens Properties by fraud rather than embezzlement. I decline to do so. At least with respect to Minnesota law, Movants propose a distinction without a difference considering the court's holding in *Fingerhut*,[67] a case referenced in *Smith*, but not discussed by the parties.

---

the Minnesota Court of Appeals previously reached the same conclusion on similar facts in a published opinion. *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63 (Minn. Ct. App. 1990). As with other nonbinding precedent, the Court views this case as authority to the extent its reasoning is persuasive.

[65] *Smith*, 2003 WL 21911200, at *2 ("The sole function of the lis pendens is to give constructive notice to all the world of the pendency of the action and that the party filing the lis pendens has rights and equities in the land therein described.").

[66] *Id.* at *3 ("the action must be based on a claim involving title to, interest in, or a lien upon real property. This includes an action based on an equitable lien arising from a constructive trust that affects title to the property.") (citations omitted).

[67] *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63 (Minn. Ct. App. 1990). *Fingerhut* also concerns a priority dispute between the filer of the lis pendens and a mortgagee.

In *Fingerhut*, an employee (Connelly) defrauded Fingerhut of a large sum of money and together with his wife used some of the money to purchase and improve a home. Fingerhut sued Connelly alleging that the home/real estate was held by Connelly in a constructive trust for the benefit of Fingerhut and filed a notice of lis pendens on the real estate. Later, Fingerhut obtained an order in a federal district court, which determined that Connelly was a fiduciary of Fingerhut, he defrauded Fingerhut and at least $141,000 of the funds Connelly fraudulently obtained could be traced directly to the purchase and improvement of the real estate. The federal court also concluded that a constructive trust over the real estate arose in favor of Fingerhut when the Connellys became the owners of the real estate. On appeal of the trial court's decision resolving a dispute between Fingerhut and a mortgagee, the Minnesota Court of Appeals made two conclusions relevant here: (i) "[a]lthough a constructive trust is not in itself construed as a lien, it establishes an equitable lien for enforcement of the trust which brings the cause of action within the list pendens statute" and (ii) "[a] constructive trust arises whenever legal title to property is obtained through fraud committed by a fiduciary."[68]

### 2. *American Motor Club* (New York, a Title State)

New York's lis pendens statute is of the "affecting title" variety: "a notice of pendency 'may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real

---

[68] *Id.* at 67 (citations omitted).

property.'"[69]  The notice of pendency both puts the world on constructive notice that the real

estate is subject to a pending lawsuit and permits the plaintiff to prosecute its lawsuit with

the court preserving its power over the property in the interim.[70]

In *American Motor Club*, a former director embezzled funds from American Motor

Club ("AMC") and used those ill-gotten funds to pay all or the majority of a downpayment

on a home.[71]  AMC subsequently filed for bankruptcy and brought an adversary proceeding

seeking, among other relief, a declaratory judgment that it held equitable title to the home

and for a constructive trust to benefit debtor's estate.[72]  The former director moved to strike

the lis pendens, asserting it would be inequitable to reconvey the home because it had

appreciated such that the embezzled funds were relatively insignificant compared to the

value of the property and because the "allegations in the complaint support[ed] no more

than a money judgment and as a result, a notice of pendency [was] improper in that there

[was] no direct relationship between the claim and the premises."[73]

Citing New York state law, the court concluded it "well settled that an action seeking

to impose a constructive trust" is one on which a notice of pendency can be filed.  The court

rejected the argument that the real estate is unrelated to the embezzled money as it was just

used as a downpayment for the purchase.  And, while recognizing that plaintiff will have

---

[69] *Am. Motor Club, Inc. v. Neu (In re Am. Motor Club, Inc.)*, 109 B.R. 595, 597 (Bankr. E.D.N.Y. 1990) (Duberstein, C.J.) (quoting N.Y. C.P.L.R. § 6501 (1963)).  *See id.* at 596 n.1 (explaining why the court used "notice of pendency" and lis pendens interchangeably).

[70] *Id.* at 597 (quoting 75 New York Jurisprudence. 2d *Lis Pendens* § 3 (1989)).

[71] *Id.* at 596-97.

[72] *Id.* at 597.

[73] *Id.*

the burden of tracing at trial, the court concluded that, if AMC's allegations are true and the misappropriated funds are directly traceable to the down payment on the property, then AMC has met the prerequisites for a notice of pendency.  In so concluding, the court also rejected an argument that seeking money damages in other counts of the complaint makes it one merely seeking damages.

Movants' attempts to distinguish *American Motor Club* are unavailing as they do not detract from the heart of the decision.  Movants argue that Trustee has not alleged that the Lis Pendens Properties have appreciated in value as was the case in *American Motor Club*.[74] While Movants are correct, the court did not rely on the appreciated value in its ruling, but concluded that was only the more reason a constructive trust should be imposed.[75]  Movants also argue that the court's reliance on *Keen* is misplaced because it is too brief a decision to determine if there are distinguishing facts which might aid their arguments.  Movants

---

[74] Movants' Post-Hr'g Mem. 10-11.

[75] The entirety of the passage is:

> The defendant also contends that because the property is now worth in excess of $1,500,000 and the alleged defalcation amounts to only $300,000, a turnover of the property would be inequitable.  This argument is meritless.  Since the purportedly misappropriated funds apparently represented a large majority or perhaps the entire downpayment, in the absence of any statement by the defendant that she invested anything in the subject property and in light of the probability that the remaining money was borrowed and secured by a mortgage on the property, it is irrelevant that she was able to buy a property for $1.5 million with a 20% downpayment.  Even assuming *arguendo* that there has been a substantial increase in the market value of the property, there is only better reason why a constructive trust be imposed.  Where an officer or director has been found to have diverted corporate assets, he will be held accountable for the fruits of his wrongdoing.  *Wolff v. Wolff*, 67 N.Y.2d 638, 641, 490 N.E.2d 532, 499 N.Y.S.2d 665 (1986).

*Am. Motor Club*, 109 B.R. at 600.

overemphasize the court's reliance on *Keen*, which is but one of many cases cited.[76]

Finally, Movants suggest that the court should reject *American Motor Club* because it cites to cases for the outdated proposition that a lis pendens/notice of pendency does not prevent the sale of the subject property. Movants contend that times have changed and "it is difficult to believe that any modern court would take the position that a lis pendens does not impair one's ability to sell property and does not create an encumbrance on the property."[77] I agree with Movants' assessment. There is no question that a lis pendens creates a cloud on the title of the subject property and it is hard to believe that any title company would provide a clean title at closing. But, this is a policy argument for the legislatures of the various states. And, New York has decided that lis pendens are appropriate in these circumstances. Indeed, Virginia courts adhere to the same proposition.[78]

### 3. *Countrywide Home Loans, Inc. v. Howard* (Texas, an Interest State)[79]

Texas law provides that a lis pendens can be based on "an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property . . . ."[80] The purpose of the lis pendens is to put

---

[76] *Id.* (describing *Keen* as a case in which the court held that the filing of a notice of pendency was proper after fraudulently removed funds were traced to real estate).

[77] Movants' Post-Hr'g Mem. 10.

[78] *E.g.*, *Palm Harbor Homes, Inc. v. Leader Funding, Inc.*, 70 Va. Cir. 31, at *2 (2005) ("The filing of a lis pendens neither creates nor enforces a lien, but rather 'serves merely as notice of the pendency of the suit to anyone interested and a warning that he should examine the proceedings therein to ascertain whether the title to the property was affected or not by such proceedings.'") (quoting *Green Hill Corp. v. Kim*, 842 F.2d 742, 744 (4th Cir. 1988)) (internal quotations omitted).

[79] While the parties did not specifically discuss *Countrywide* and the cases that follow, the Hild Entities cited to 51 Am. Jur. 2d *Lis Pendens* §§ 19, 23 and 35 (2025) as well as 54 C.J.S. *Lis Pendens* § 11 (2025) in which these cases are cited. Movants' Post-Hr'g Mem. 5-6.

[80] Tex. Prop. Code Ann. § 12.007(a) (West 2025).

prospective purchasers on inquiry of the lawsuit and that any acquisition of the land is subject to the outcome of pending litigation.[81]

In *Countrywide Home Loans*, the court appointed a receiver for an insurance entity (Tesher Corp.) placed into a receivership. The receiver discovered that a former employee improperly obtained $144,500 from Tescher and then used those funds to purchase real estate, bought a vehicle with other funds and received $10,000 in cash.[82] The receiver sued alleging a long list of wrongs including common-law fraud, constructive fraud, breach of fiduciary duty and conversion. He sought a judgment in the amount of $185,300 and alternatively prayed for a constructive trust on the real estate and the vehicle and an order for the employee to transfer both to Tesher. The receiver then filed a lis pendens on the real estate in the appropriate real property records. Countrywide intervened seeking a declaratory judgment that its lien on the real estate was superior to any rights the receiver might obtain in the lawsuit. Countrywide argued that the receiver's request for a constructive trust was not a proper basis for a lis pendens.

Like Virginia, an action seeking only money damages will not support a lis pendens in Texas.[83] But, unlike Virigina so far, Texas draws a bright-line distinction with respect to constructive trust actions.[84] If a constructive trust seeks "to restore to the aggrieved party the actual property that was misappropriated," it presents a direct interest and will support a lis

---

[81] *Countrywide Home Loans, Inc. v. Howard*, 240 S.W.3d 1, 4 (Tex. App. 2007).

[82] *Id.* at 2-3.

[83] *Id.* at 4 (citing *Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995)).

[84] There may be a slight waiver in the bright line, but the vast majority of cases uphold it. *In re Chong*, No. 14-19-00368-CV, 2019 WL 2589968 (Tex. App. June 25, 2019).

pendens.[85] On the other hand, a constructive trust action will not support a lis pendens if the filing party never possessed the property at issue. The Texas courts label this a "collateral interest."[86] The court stated that this collateral interest is really to satisfy a judgment against the defendant. That the real property at issue was purchased with fraudulently obtained funds does not change the analysis. Accordingly, the court held that the receiver's constructive trust action sought only a collateral interest and thus did not justify imposition of a lis pendens.[87] While it does not appear to be a basis for the decision, the court noted the disruptive effect that lis pendens have on real estate sales.[88]

### 4. *Ross v. Specialty Risk Consultants, Inc.* (Wisconsin, an Interest State)

In Wisconsin, filing a lis pendens is permitted "[i]n an action where relief is demanded affecting described real property which relief might confirm or change interests in the real property . . . ."[89] Wisconsin recognizes that the primary purpose of its statute is to "protect the courts' and the litigants' interests in the finality of the judgment" and to give prospective purchasers notice of pending actions.[90] Wisconsin also recognizes that a lis

---

[85] *Countrywide Home Loans*, 240 S.W.3d at 6.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 4 ("Lis pendens can be a powerful tool that can provide significant protection and leverage to the party seeking to establish an interest in a specific parcel of real estate. A lis pendens timely and properly filed can effectively halt very large real estate sales involving millions of dollars pending the outcome of litigation." (quoting Gary Powell, *Real Estate Remedies: Lis Pendens,* 32 The Advocate (Texas) 70, 70 (2005))).

[89] Wis. Stat. Ann. § 840.10(1)(a) (West 2025).

[90] *Ross v. Specialty Risk Consultants, Inc.*, 621 N.W.2d 669, 675 (Wis. Ct. App. 2000).

pendens clouds title and effectively prevents transfer of property; thus, limits lis pendens "actions directly seeking to obtain title to or possession of specific real property."[91]

In *Ross*, the town of Cicero, Illinois filed suit alleging two corporations had "participated in an embezzlement scheme to defraud millions of dollars from the Town's self-insurance program" and used those funds to purchase a golf course in Wisconsin.[92]  The town sought a constructive trust on the golf course, among other relief, and filed several lis pendens on the real estate comprising the golf course.  While the litigation was pending, an unrelated entity sought to foreclose on the golf course and named the town as a defendant with a potential interest in the property.

Interpreting the statute, the court reasoned that "[a]n interest in land comprehends 'every kind of claim to land which can form the basis of a property right'"[93] and that an action seeking to impose "a constructive trust may ultimately change legal title."[94] Therefore, an action to impose a constructive trust on real property justifies filing a lis pendens.[95]  Interpreting its law on constructive trusts, the court stated that a constructive trust is a remedy "that arises whenever another's property has been wrongfully appropriated and converted into a different form" and is designed to prevent fraud and to accomplish justice.[96]  As particularly relevant here, the court held that a constructive trust follows the

---

[91] *Id.* at 678.

[92] *Id.* at 673.

[93] *Id.* at 676 (quoting *Weber v. Sunset Ridge, Inc.*, 68 N.W.2d 706, 709 (Wis. 1955)).

[94] *Id.* (citing 1 Dan B. Dobbs, Law of Remedies § 4.3(1), at 587-88 (2d ed. 1993)).

[95] *Id.*

[96] *Id.* at 675.

misappropriated property or the proceeds thereof.[97]  The court concluded that an action

seeking the imposition of a constructive trust can ultimately change legal title and, as such,

is encompassed by the lis pendens statute.

In making its ruling, the court specifically distinguished the factual scenario before

it—a request for a constructive trust against real property based on its purchase with

embezzled funds—from cases seeking a constructive trust as a remedy "solely as 'collateral'

for money damages."[98]

### c. *Heck v. Adamson* (District of Columbia, a-then Interest State)

In *Heck*,[99] the court examined the District of Columbia's lis pendens statute as it

existed in 2008.  At that time, the statute provided that notice of lis pendens could be filed

based on an action "affecting the title to or asserting a mortgage, lien, security interest, or

other interest in real property situated in the District of Columbia . . . ."[100]  The dispute was

between former co-owners of a home.  Plaintiff alleged that defendant sold their jointly

owned real property, refused to pay plaintiff his share of the proceeds of the sale and utilized

---

[97] *Id.* at 676.  "It would be a signal failure of justice if one who has become a constructive trustee by reason of wrongfully receiving or securing the property of another could escape the consequences of his acts by changing the form of the property thus acquired.  Hence, as between him and the *cestui que trust*, the latter may pursue the funds into the new investment and charge that investment with the trust.  He may also assert and enforce the same right against third parties to whom the property has been transferred with knowledge of the trust or who have paid no consideration for it, provided the identity of the trust fund can be established." *Id.* at 676 n.7 (quoting *Truelsch v. Nw. Mut. Life Ins. Co.*, 202 N.W. 352, 357 (Wis. 1925).

[98] *Id.* at 678 (citing to *BGJ Assocs. LLC, v. Superior Ct. of L.A.*, 75 Cal. App. 4th 952, 971 (Cal. Ct. App. 1999).

[99] *Heck v. Adamson*, 941 A.2d 1028, 1029 (D.C. 2008), *superseded by statute*, Lis Pendens Amendment Act of 2010, Law 18-180, Act 18-377, *as recognized in*, *Garcia v. Tygier*, 295 A.3d 594 (D.C. 2023).

[100] D.C. Code § 42-1207(a) (2010), *superseded by* D.C. Code § 42-1207 (2025) (substituting "ownership interest" for "other interest" among other changes).

26

the proceeds to purchase and renovate different real property.  Plaintiff sought, among other

relief, the imposition of a constructive trust on the real property purchased with the sale

proceeds and filed a notice of lis pendens on that basis.

The court upheld the lis pendens, reasoning that an action to impose a constructive

trust on real property asserts "an interest" in that property—albeit an equitable one—which

was all a plain reading of the statute required.[101]  The court bolstered its conclusion by

noting that "it has been recognized generally that '[l]is pendens . . . applies to actions seeking

creation of a constructive trust on specific property . . . .'"[102]  At no point does the court

express concern that the plaintiff never possessed the real property that would be subject to

the constructive trust or that the underlying cause of action arose from the alleged

conversion of money rather than real estate.  The court also specifically disclaimed any

requirement that a plaintiff must show his legal remedies are inadequate to justify filing a lis

pendens based on an equitable remedy.[103]

In response to *Heck*, the Council of the District of Columbia revised the District's lis

pendens statute "to correct flaws in the law."[104]

> To accomplish its goals, the Council amended subsection (b) to state that the
> notice of lis pendens authorized by D.C. Code § 42-1207 "shall be effective *only
> if the underlying action or proceeding directly affects* the title to or tenancy interest
> in, or asserts a mortgage, lien, security interest, right of first offer, right of first
> refusal, or other ownership interest in real property situated in the District of
> Columbia."  Lest there be any doubt about this curtailment of lis pendens
> notices, the Council also added new subsection (j) to § 42-1207, which states

---

[101] *Heck*, 941 A.2d at 1029-30.

[102] *Id.* at 1030 (quoting 14 Powell on Real Property § 82A.02 [4][a] (2000)).

[103] *Id.* at 1031.  The court does recognize that discharge of a lis pendens would be appropriate where
a complaint sought only monetary damages.  *Id.* at 1031 n.4.

[104] *Garcia v. Tygier*, 295 A.3d 594, 602 (D.C. 2023); *see generally*, Report on Bill 18-91, Lis Pendens
Amendment Act of 2010.

that "[t]he provisions of subsections (a) and (b) of this section *shall not* be
construed to apply where the title to or interest in the real property affected by
the notice *is not directly at issue in the underlying action or proceeding*." The Report
on the Bill categorically states that the Council revised subsection (b) and added
subsection (j) to "specif[y] that the doctrine of lis pendens cannot be applied to
real property tangentially related to the dispute, such as was the case in
[*Heck*].[105]

With the more restrictive language, the District of Columbia joined the states requiring the

underlying lawsuit to directly affect title to real property, eschewing its previous standard

that the underlying lawsuit could merely affect an "interest" in real property.

*Conclusions*

Considering the language of Virginia's lis pendens statute, Virginia decisional law

interpreting it and cases from other jurisdictions, I hold that the Virginia Supreme Court

would uphold a filing of a lis pendens in these circumstances. First, as I have already

concluded, Virginia recognizes the imposition of a constructive trust in these circumstances,

i.e., where misappropriated funds are distinctly traceable into specific property. Under

Virginia law, imposition of a constructive or resulting trust on fraudulently obtained

property or its proceeds is a valid remedy and creates an equitable interest in property.

Second, the plain language of Virginia's lis pendens statute requires only that the underlying

lawsuit seek "to establish an interest" in the real property at issue. Indeed, Virgina courts

have upheld the filing of a lis pendens in arguably more remote circumstances, such as

where the subject real estate was not directly owned by the defendant, but by an entity

which defendant owned or had an interest in. Third, the result here is consistent with both

the common law and statutory goals recognized by Virginia: by making any subsequent

---

[105] *Id.* (footnotes omitted) (affirming cancellation of lis pendens on property purchased some thirty
years before and having nothing to do with the alleged wrongdoing.).

purchase of the property subject to the results of the pending litigation, the lis pendens implements the common law goal of ensuring that the Court may execute a judgment against the properties if it determines that Trustee is entitled to the equitable relief he seeks in the Complaint. Meanwhile, the statutory goal of ameliorating the harshness of the common law doctrine is self-executing, as demonstrated by Trustee filing of memoranda of lis pendens to generate constructive notice.

I recognize decisions which hold to the contrary. But, I am not persuaded that the Virginia Supreme Court would conclude that the circumstances here are a "collateral" use of the lis pendens statute. It is perhaps a truism that a lawsuit seeking a constructive trust over misappropriated real property is more direct than a lawsuit seeking a constructive trust over real property purchased with misappropriated funds. But, when the funds are distinctly traceable to the real property, Virginia law concludes the relief of a constructive trust is no less appropriate.

I am also sensitive to the significant limitations imposed on the rights of a holder of real property by the filing of a lis pendens. But, nothing in the history of Virginia's lis pendens statutes addresses that imposition or indicates it should be weighed against, much less above, the articulated policies underlying the statute. Concerns about the harsh results of the statute are properly addressed to the Virginia legislature. Indeed, the Virginia legislature previously intervened to narrow the scope of the lis pendens doctrine through statutory amendment and other jurisdictions have legislated to address this very issue, most notably the District of Columbia. To the extent that the policy needs to be changed, the legislature is the appropriate body to change it.

Accordingly, I will deny Movants' motion to quash or cancel notice of lis pendens.

### III.    Trustee's Proper Filing of Memoranda of Lis Pendens Did Not Slander Movants' Title to the Lis Pendens Properties

"To state a valid claim for slander of title under Virginia law, a plaintiff must allege facts showing '(1) the uttering and publication of the slanderous words by the defendant, (2) the falsity of the words, (3) malice, (4) and special damages."[106] The Supreme Court of Virginia "has long recognized that 'words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged' . . . ."[107] "The rule of absolute privilege 'is broad and comprehensive, including within its scope all proceedings of a judicial nature whether pending in some court of justice, or before a tribunal or officer clothed with judicial or quasi-judicial powers,' and includes 'any proceeding for the purpose of obtaining such remedy as the law allows.'"[108] The privilege also extends to lis pendens so long as the information contained therein is "sufficiently 'relevant and pertinent to the matter under inquiry' . . . ."[109]

Having found Trustee's memoranda of lis pendens based on the Complaint in this adversary proceeding permissible under the Virginia lis pendens statute, I conclude the memoranda of lis pendens are relevant to this matter and subject to Virginia's absolute privilege rule. Even if the privilege does not apply, Movants are unable to establish falsity of words due to my holding that Trustee seeks to establish an interest in the Lis Pendens

---

[106] *Allison v. Shapiro & Burson, LLP*, No. 1:09CV00057, 2009 WL 4015410, at *7 (W.D. Va. Nov. 19, 2009) (quoting *Lodal v. Verizon Va., Inc.*, 74 Va. Cir. 110, at *2 (2007)).

[107] *Givago Growth, LLC v. iTech AG, LLC*, 863 S.E.2d 684, 687 (Va. 2021) (citing *Lindeman v. Lesnick*, 604 S.E.2d 55 (Va. 2004)).

[108] *Id.* (quoting *Penick v. Ratcliffe*, 140 S.E. 664, 667 (Special Ct. App. Va. 1927)).

[109] *Id.* at 688 (citing *Lindeman v. Lesnick*, 604 S.E.2d 55 (Va. 2004)).

Properties recognizable under Virginia's lis pendens statute.  For these reasons, I will deny Movants' motion for fees and damages for slander of title.

**Conclusion**

For the foregoing reasons, I will deny the Motion of Hild Entities to Quash or Cancel Notice of Lis Pendens.  A separate order will enter.

Dated:  December 15, 2025

Laurie Selber Silverstein
United States Bankruptcy Judge